[No. 9739-3-I. Division One. August 30, 1982.]

JAMES P. CAMERON, *as Administrator, Appellant,* v.
A. E. DOWNS, ET AL, *Respondents.*

876

*Wayne R. Parker, Jr.,* for appellant.

*Thomas J. Collins, Merrick, Hofstedt & Lindsey,* and *Kenneth L. LeMaster,* for respondents.

DURHAM, A.C.J.—James P. Cameron appeals an order of summary judgment dismissing A. E. Downs and Brenda Downs as defendants in a wrongful death action.

Stephen Cameron died when the vehicle in which he was a passenger left the road and struck a tree in the early morning hours of March 11, 1979. Steven Downs was driving the van in which Cameron was a passenger. James P. Cameron, Stephen's father and administrator of his son's estate, sued to recover damages for wrongful death.

Defendants in that action were Steven Downs, his father A. E. Downs, and his sister Brenda Downs. The complaint alleges that A. E. Downs is liable for damages for the wrongful death of Stephen Cameron under the family car doctrine, and that Brenda Downs is liable under the theory of negligent entrustment.

The van in which Cameron was killed was owned by A. E. Downs for use in his business. Brenda used the van for personal purposes, as well as on business when she worked for her father. Jeff Pringle, a friend of Steven Downs and an employee of A. E. Downs, also had permission to use the van, both for business and for pleasure.

Steven Downs was allowed to ride in the van but was not permitted to drive it or any other vehicle. In fact, Steven was forbidden to operate "anything that moved." Steven, as well as Brenda and other members of the family, knew that he was not to drive any of the family vehicles because he had had three accidents and, consequently, had insurance problems.

Cameron assigns error to the dismissal on motion for summary judgment of A. E. Downs and Brenda Downs as defendants in the wrongful death action.

Pursuant to CR 56(c), a summary judgment of dismissal may be granted only if the pleadings, affidavits, depositions and admissions on file demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In ruling on the motion, the court's function is to determine if a genuine issue of material fact exists; it is not to resolve an existing factual issue. A material fact is one upon which the outcome of the litigation depends, in whole or in part. All reasonable inferences from the evidence must be resolved against the movant and considered in the light most favorable to the nonmoving party. The motion should be granted only if, from all the evidence, reasonable men could reach but one conclusion. *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980).

We turn first to the dismissal of Brenda Downs. The

theory of liability for negligent entrustment is stated in *Hulse v. Driver,* 11 Wn. App. 509, 514–15, 524 P.2d 255 (1974):

> It is the general rule that an owner or other person in control of a vehicle and responsible for its use, who entrusts the vehicle to another, may be held liable for damages resulting from the use of the vehicle, under the theory of negligent entrustment, where he knew, or should have known in the exercise of ordinary care, that the person to whom the vehicle was entrusted was intoxicated at the time of the entrustment.

The theory is also applicable if the owner of the vehicle entrusts it to someone whom he or she knows to be reckless, heedless, or incompetent. *Jones v. Harris,* 122 Wash. 69, 210 P. 22 (1922). This theory also applies despite the fact that Brenda was not the registered owner of the van. *See* Restatement (Second) of Torts § 390 (1965).

The facts are disputed as to how Steven obtained the keys to the van. Shortly before the accident, Steven Downs moved into a house with Paul Hodge and another young man. On March 10, 1979, the occupants of the house decided to have a party that evening. According to Hodge's affidavit, Brenda Downs visited their house the afternoon before the party and gave Steven the keys to the van. Brenda told Steven that she did not want him riding on Jeff Pringle's motorcycle when he was going to be drinking, and that it would be safer for him to drive the van. Paul Hodge modified his version of events somewhat in a later deposition. He stated that Brenda came over on the afternoon of March 10 and offered the keys to Jeff Pringle and Steven Downs. One of them took the keys and left them on the counter; Hodge did not remember which boy took the keys from Brenda. Paul Hodge also stated that when he visited Steven Downs in the hospital after the accident, Hodge encountered Brenda Downs. She told him "not to tell anybody that she had given Steve the keys, because he could get in a whole lot of trouble." Kelly Ross, another witness, reported a similar remark.

According to Brenda Downs, Steven asked her if he and Jeff could use the van. Brenda gave her permission, with the understanding that Jeff would be driving. At the time that Steven requested the use of the van, the keys were lying on the counter. Later in the evening, Brenda returned to Steven's house and saw the van parked in the driveway and Steven at the party.

In Jeff Pringle's deposition, he stated that he was present at the Downs home on the evening of March 10, 1979, and that Brenda and Steven Downs were also there. After Brenda put the keys to the van on the counter, Steven took them and drove the van to Paul Hodge's house.

In addition, Michael Riley, who was present at the party, stated that Jeff Pringle was not at the party; that Steven Downs had custody of the van; that he had Brenda's keys to the van; and that these facts were known to Brenda who was also present at the party. Brenda did nothing to prevent her brother from driving the van and did not attempt to take the keys with her when she left.

There is also evidence in the record that Brenda knew or, in the exercise of ordinary care, should have known that her brother was both a reckless driver and likely to be intoxicated. Riley stated that Steven Downs had a reputation in the community as a reckless, dangerous, and incompetent driver; that those tendencies increased when he drank; and that he was drinking whiskey at the party before the accident. James Cameron, brother of the deceased, offered similar testimony.

We conclude that the trial court improperly dismissed Brenda Downs on the motion for summary judgment. The evidence summarized above, considered in the light most favorable to Cameron, demonstrates that a genuine issue of material fact exists as to Brenda Downs' liability under the theory of negligent entrustment.

Cameron next contends that because a jury could find A. E. Downs liable under the family car doctrine, the trial court erred in dismissing him as a defendant. Liability under the family car doctrine arises when (1) the car is

owned, provided or maintained by the parent (2) for the customary conveyance of family members and other family business and (3) at the time of the accident the car is being driven by a member of the family for whom the car is maintained, (4) with the express or implied consent of the parent. *Gotcher v. Rowell,* 2 Wn. App. 615, 616, 468 P.2d 1004 (1970). Cameron bases his theory of A. E. Downs' liability upon Brenda's negligence in entrusting Steven with the van, rather than upon Steven's negligence in driving the van.

An automobile owner may incur liability under the family car doctrine for injuries caused by a third person to whom a family member has entrusted the car if the car was used for the pleasure and convenience of a family member. (For purposes of analysis, we consider Steven to be a "third person," rather than a family member.) *See Holthe v. Iskowitz,* 31 Wn.2d 533, 548, 197 P.2d 999 (1948); *Phillips v. Dixon,* 236 Ga. 271, 223 S.E.2d 678 (1976); 6 *Blashfield on Automobiles* § 255.31, at 480 (3d ed. F. Lewis 1966). In addition, a parent cannot escape liability merely because the automobile was being used in a manner forbidden at the time of the accident. *Hawes v. Taylor,* 246 Or. 32, 423 P.2d 775 (1967); 6 *Blashfield* § 255.29, at 748; *see King v. Cann,* 184 Wash. 554, 52 P.2d 900 (1935).

Liability under the family car doctrine is based upon agency principles; that is, members of the family who are permitted to drive the automobile are agents of the owners. *See McGinn v. Kimmel,* 36 Wn.2d 786, 788, 221 P.2d 467 (1950). Under the family purpose doctrine, Brenda was the agent of A. E. Downs as long as she was using the van in furtherance of the family purposes for which it was maintained. *See Schnebly v. Bryson,* 158 Wash. 250, 290 P. 849 (1930). It is a question of fact in each case whether or not the member of the family driving the car is at the time in any real sense on business for the head of the family as distinguished from his or her own personal affairs. Restatement (Second) of Agency § 238, comment *c* (1958).

Because the family car doctrine is grounded in agency

law, *McGinn v. Kimmel, supra,* we analyze potential liability using the terminology of that body of law.[1] A master is subject to liability for physical harm caused by the negligent conduct of servants within the scope of their agency. Restatement (Second) of Agency § 243 (1958). An act, although forbidden or done in a forbidden manner, may be within the scope of one's agency. Restatement (Second) of Agency § 230 (1958).

Our inquiry is, thus, was there an issue of fact as to whether or not Brenda was acting within the scope of her agency? To be within the scope of one's agency, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. Restatement (Second) of Agency § 229(1) (1958). Among the matters of fact to be considered in determining if an agent's conduct, although not authorized, is nevertheless within the scope of her agency are the time, place and purpose of the act, and whether or not the master had reason to expect that such an act would be done. Restatement (Second) of Agency § 229 (1958).

We conclude that the trial court could not determine as a matter of law that Brenda was acting outside the scope of her agency, thereby absolving A. E. Downs of liability. For instance, if Brenda did indeed entrust Steven with the van, it is for a trier of fact to determine why she did so, and if doing so was within the scope of her agency, although it was forbidden. In addition, a trier of fact should determine if despite his admonitions to his family, A. E. Downs had reason to expect that Brenda might loan the van to Steven.

█ Finally, Cameron contends that the trial court erred

---

[1]We realize that an analysis based upon agency principles may seem rather strained. As Prosser noted:

"There is obviously an element of unblushing fiction in this manufactured agency; and it has quite often been recognized, without apology, that the doctrine is an instrument of policy, a transparent device intended to place the liability upon the party most easily held responsible."

W. Prosser, *Torts* § 73, at 483 (4th ed. 1971). However, we are bound to this line of reasoning by the doctrine of stare decisis.

in dismissing the cause of action against A. E. Downs based upon his liability in respondeat superior for the negligence of his employees. Cameron contends that Downs is liable regardless of who actually gave Steven the keys to the van because both Brenda and Jeff were Downs' employees. This issue was not argued before the trial court and we will not consider it for the first time on appeal. *Carpenter Trusts v. AA Constr., Inc.,* 28 Wn. App. 587, 590, 624 P.2d 1173 (1981).

The order of summary judgment dismissing Brenda Downs and A. E. Downs as defendants is reversed and the cause remanded for trial.

JAMES and RINGOLD, JJ., concur.