[No. 51333–3.   En Banc.   June 12, 1986.]

JOHN MELE, *Respondent*, v. CHARLES TURNER, ET AL, *Petitioners*.

---

[42]*State v. Patterson,* 83 Wn.2d 49, 52, 515 P.2d 496 (1973).

[43]*Patterson,* at 52; *State v. Higby,* 26 Wn. App. 457, 613 P.2d 1192 (1980).

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *John Q. Powers, Brian F. Kreger,* and *Gary House,* for petitioners.

*Christopher C. Pence* and *Kelby Fletcher,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue here is whether an adult, who was mowing his neighbors' lawn using the neighbors' rotary lawn mower, is entitled to recover damages from his neighbors for injuries which resulted when he put his hand in or under the running mower. We hold that under the facts presented, he is not.

On June 19, 1980, Ann Garrett told neighbor Dolores Turner that her 13–year–old son would mow the Turners' lawn using the Turners' rotary lawn mower. The next day, however, the boy was unable to mow the lawn, so his

mother asked plaintiff, an 18 (almost 19)–year–old student at Northwestern University, if he would do so. Plaintiff agreed.

Garrett's son showed plaintiff the push–type, Sears, Roebuck rotary lawn mower, told him how to start it, what area to mow and where to put the grass clippings. The boy then went home.

After plaintiff had been mowing for about 20 minutes, Mrs. Turner returned home from work. Plaintiff told her that he was substituting and she agreed to this arrangement. She determined that plaintiff knew which areas to mow and stated that they would discuss payment afterward. Plaintiff did not indicate that he was having any difficulty with either the lawn mower or his lawn mowing task. Satisfied, Mrs. Turner went inside the house.

Plaintiff mowed for 1 to 1½ hours without incident. He emptied the grass catcher periodically as it became full and each time noticed that grass clippings accumulated around the mouth of the mower's discharge chute as well as in front of the chute. Without turning the mower off, plaintiff would sweep away these clippings with his left hand. After doing this a few times, and in the course of doing it again, he placed his fingers under the chute and into the mower housing. The spinning rotary blade hit his hand, causing injury to four fingers.

Plaintiff sued both the Turners and the Garretts, alleging that they had breached duties to provide him with a safe lawn mower and to warn him of the dangers associated with running the mower. The trial court granted defendants' motions for summary judgment, stating that

> plaintiff injured his hand by putting it into the whirling cutter blade when the lawnmower was running; that there was no duty on the part of any of the defendants to warn the plaintiff, who was a college student, that if he put his fingers into the whirling blade he could suffer serious injury.

In an unpublished opinion, the Court of Appeals reversed

the trial court and remanded for trial.[1] We granted review.

Whether or not the defendants owed a duty to the plaintiff is a question of law for this court.[2] Accordingly, two principal issues are here presented.

## ISSUES

ISSUE ONE. Under the facts of this case, did the defendants breach a duty owed to the plaintiff under Restatement (Second) of Torts § 390?

ISSUE TWO. Under the facts of this case, did the defendants breach a duty owed to the plaintiff under Restatement (Second) of Torts § 388?

## DECISION

ISSUE ONE.

CONCLUSION. No evidence was presented that the defendants knew or had reason to know that the plaintiff, an 18–year–old college student, would likely use an ordinary walk–behind rotary lawn mower in a manner involving unreasonable risk of harm to himself. Thus the Court of Appeals erred when, on the basis of Restatement (Second) of Torts § 390, it reversed the trial court's entry of a summary judgment of dismissal.

Restatement (Second) of Torts § 390 (1965) reads as follows:

Chattel for Use by Person *Known To Be Incompetent*
One who supplies directly or through a third person a chattel for the use of another *whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise,* to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

---

[1]*Mele v. Turner,* 37 Wn. App. 1076 (1984).

[2]*Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984); *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982).

(Italics ours.) This is the law of this State.[3]

"This Section deals with the supplying of a chattel to a person *incompetent* to use it safely . . ." (Italics ours.)[4]

The kinds of "incompetency" which come within this rule are set forth in the "Illustrations" prepared by the authors of the Restatement. These include: giving a loaded gun to a feebleminded child of 10; permitting a 10–year–old child, who has never driven an automobile before, to drive one; permitting one's chauffeur, who is in the habit of driving at excessive speeds, to drive the car on an errand of his own; lending one's car to a friend to drive to a dance, knowing that the friend habitually becomes intoxicated at dances; and renting an automobile to a person who says that he plans to drive it from Boston to New York in 3 hours to win a bet.[5] Washington cases have followed this pattern, holding that liability may be imposed under section 390 for selling a gun to an intoxicated person[6] and for lending an automobile to someone known (or who should have been known) to be a reckless driver and likely to become intoxicated and drive.[7]

Even if we assume that there is evidence of the plaintiff's "incompetency" to operate a rotary lawn mower sufficient to survive a motion for summary judgment, we are still left with a total dearth of evidence that the defendants knew or should have known of that incompetency. There is simply nothing in the record to show that the plaintiff was "likely because of his youth, inexperience, or otherwise, to use [the rotary mower] in a manner involving unreasonable risk of physical harm to himself and

---

[3]*Bernethy,* at 933; *Cameron v. Downs,* 32 Wn. App. 875, 878, 650 P.2d 260 (1982).

[4]Restatement (Second) of Torts § 390, comment *b* (1965).

[5]Restatement (Second) of Torts § 390, comment *b,* illustrations 1–5 (1965).

[6]*Bernethy v. Walt Failor's, Inc., supra.*

[7]*Cameron v. Downs, supra.*

others".[8] There is no requirement of law or reason mandating that someone asking a neighbor to mow a lawn must question that neighbor's competency when he is a college student 2 months shy of 19 who lacks obvious physical or mental impairment.

ISSUE Two.

CONCLUSION. Where the alleged "dangerous condition" of the lawn mower was both obvious and known to the plaintiff, the defendants owed him no duty to warn of such condition. The plaintiff has no cause of action under Restatement (Second) of Torts § 388.

Plaintiff also argues that he has a claim under Restatement (Second) of Torts § 388 (1965), which reads:

Chattel Known To Be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, *and*

(b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and*

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(Italics ours.) This is also the law of this State.[9]

A warning was stamped on the lawn mower casing: "Keep hands and feet from under mower". The plaintiff says he didn't see this because it was obscured by grass clippings and otherwise not apparent. He then argues that the tendency of the wet grass to accumulate near the mouth of the

---

[8]Restatement (Second) of Torts § 390 (1965).

[9]*Fleming v. Stoddard Wendle Motor Co.*, 70 Wn.2d 465, 467–68, 423 P.2d 926 (1967).

mower's discharge chute, together with the spinning blade just inside the discharge chute, created a dangerous condition about which the defendants should have warned him.

In order to have a claim under section 388, a party must satisfy all three subsections (a), (b) and (c). For the sake of this summary judgment proceeding, we will assume that either the accumulation of wet grass by the mower's discharge chute or the spinning blade behind the mouth of the discharge chute, or both, rendered the mower "dangerous for the use for which it is supplied". Section 388(a). Before he can establish that a duty to warn of these conditions arose, however, plaintiff must show that his neighbors had no reason to believe he would realize the mower's potential danger. Section 388(b).

As to this, the Restatement instructs:

> *When warning of defects unnecessary. One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved.* It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.

(Second italics ours.) Restatement (Second) of Torts § 388, comment *k* (1965).

In this regard, the policy of Restatement (Second) of Torts § 388 is similar to that of Restatement (Second) of Torts § 402A.[10] As this court held in a section 402A products liability action against a manufacturer,

a warning need not be given at all in instances where a

---

[10]*See* Restatement (Second) of Torts § 402A, comment *j* (1965); *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 479, 573 P.2d 785, 93 A.L.R.3d 86 (1978).

danger is obvious or known.[11]

The danger involved in this case was both known and obvious to the plaintiff. He stated that each time he emptied the grass catcher, he noticed that there was some grass at the opening of the discharge chute and cleaned it with his hand before replacing the catcher. As he candidly admitted in the affidavit he filed in opposition to the defendants' motions for summary judgment,

> *I obviously realized that one should not put his hand under the machine where the blade runs . . .*[12]

(Italics ours.)

Since the "dangerous condition" of the lawn mower that the plaintiff had been using for 1 to 1½ hours before his injury was obvious and known to him according to his own affidavit, the defendants had no legal duty to warn him of such a condition. Our conclusion in this regard is unaffected by the plaintiff's statement that "I could not see the turning blade and I believed it did not extend where I was reaching."[13] The blade did not come out of the housing containing it to strike the plaintiff's fingers; the plaintiff admitted that he knew he should not put his hand under the mower. Furthermore, as held in *Ragsdale v. K–Mart Corp.*, 468 N.E.2d 524, 527 (Ind. Ct. App. 1984), another rotary lawn mower case:

> The fact that the mower blade is not clearly exposed to the user of the mower does not make it a hidden, and thus latent, danger.

The plaintiff's remaining contentions under common law master/servant principles essentially overlap his contentions under Restatement (Second) of Torts §§ 388 and 390. Even were we to agree that plaintiff was an employee of some or all of the defendants at the time of his injury, we find our analysis regarding plaintiff's earlier arguments dis-

---

[11]*Haysom,* at 479.

[12]Affidavit of John Mele, at 3.

[13]Affidavit of John Mele, at 2.

positive of his master/servant contentions.

The trial court's order granting summary judgment for the defendants on liability was proper.[14]

The Court of Appeals is reversed and the trial court's judgment is reinstated.

DOLLIVER, C.J., and BRACHTENBACH, GOODLOE, and DURHAM, JJ., concur.

PEARSON, J. (dissenting)—The majority incorrectly frames the issue in this case as whether plaintiff "is entitled to recover damages from his neighbors for injuries which resulted when he put his hand in or under the running mower." Majority opinion, at 74. In reality, the issue before the trial court, the Court of Appeals, and now this court, is whether the defendants had a duty to warn plaintiff of the lawn mower's dangerous condition. The majority apparently believes this case presents an issue of liability when, in fact, the issue is one of duty. The distinction is important. This court's function is to determine whether defendants owe a particular duty to the plaintiff; but it is the jury's function to determine whether the defendants should be held liable for a breach of that duty. By transmogrifying a duty question into a liability question, the majority usurps an important function of the jury. Accordingly, I dissent.

The procedural context of this case is important. It comes to us after the trial court granted defendants' motion for summary judgment, holding that, *as a matter of law,* the defendants had no duty to warn plaintiff of the lawn mower's dangerous condition. Because the trial court decided this case on an order of summary judgment, this court must engage in the same inquiry as the trial judge. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A summary judgment pursuant to CR 56(c) can be granted only if there is no genuine issue as to *any* material

---

[14]CR 56(c); *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

fact, and the moving party is entitled to judgment as a matter of law. *Wilson,* at 437. In reviewing the motion for summary judgment, this court "must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party", *Wilson,* at 437, in this case plaintiff.

In *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 467–68, 423 P.2d 926 (1967), this court adopted Restatement (Second) of Torts § 388 (1965). Section 388 defines the liability of a supplier[15] of a dangerous chattel for failure to disclose the danger to the user. This duty to disclose arises if the supplier

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition . . .

Restatement (Second) of Torts § 388 (1965); *Fleming,* at 468. If these two conditions are satisfied, the supplier has a duty to disclose. The supplier is liable for a user's injuries, however, only if he "fails to exercise reasonable care to inform [the user] of its dangerous condition or of the facts which make it likely to be dangerous." Restatement (Second) of Torts § 388(c) (1965).

Although a duty issue constitutes a pure question of law, a determination that a duty exists under § 388 requires a certain amount of fact–finding. In particular, the court must determine whether the supplier knew or had reason to know the chattel was dangerous. § 388(a). Furthermore, the court must determine whether the supplier had reason to believe the user realized its dangerous condition. § 388(b). Because these factual questions must be answered before a court can resolve the legal question of whether a duty atta-

---

[15]Because I do not believe the Garretts are "suppliers" within the contemplation of Restatement (Second) of Torts § 388, I would not apply § 388 analysis to plaintiff's claim against them. I express no opinion on the question of whether the Garretts owed plaintiff some duty under other principles of tort law.

ches, summary judgment on the duty question would be appropriate only if there was no genuine issue as to these material facts. A genuine issue exists if reasonable persons could reach more than one conclusion. *Cf. Morris v. McNicol*, 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974).

As I interpret § 388, a supplier of a chattel has a duty to disclose if the supplier knew the chattel was dangerous and had no reason to believe the user recognized the danger. In this case, reasonable persons arguably could reach but one conclusion on the factual question of whether defendants knew or had reason to know the rotary lawn mower was dangerous. Reasonable persons could differ, however, on the question of whether the defendants had no reason to believe plaintiff realized its dangerous condition. The record clearly shows the plaintiff had never used the defendants' mower before the day of the accident. Furthermore, there is no evidence that the defendants had ever observed plaintiff using a similar type of lawn mower. In short, I fail to see how the majority could arrive at the factual conclusion, implicit in its holding, that the defendants did have reason to believe the plaintiff understood the dangers of that particular type of mower.

The majority points to a portion of plaintiff's affidavit in which he stated that he "obviously realized that one should not put his hand under the machine where the blade runs . . ." Majority opinion, at 80. Based on this statement, the majority concludes that "[s]ince the 'dangerous condition' of the lawn mower . . . was obvious and known to him . . . the defendants had no legal duty to warn him of such a condition." Majority opinion, at 80. I have two responses to the majority's analysis.

In the first place, I believe the majority places far too much weight on plaintiff's statement that he realized the dangers associated with placing one's hand "under" a running lawn mower. Plaintiff did not thrust his hand "under" the defendants' mower, as the majority suggests, but rather swept away grass clippings that accumulated at the discharge chute. The mower blade apparently reaches quite

near the chute's mouth, but is difficult to observe due to the speed of the blade's rotation. Unlike those who normally operated this mower and were aware that the discharge chute frequently clogged, plaintiff was unaware of the danger of sweeping accumulated clippings from the chute's opening.

Regardless, the question under § 388(b) is not whether the danger was obvious to plaintiff, but rather whether the defendants had reason to believe that plaintiff realized its dangerous condition. As stated above, there is a dearth of evidence in the record suggesting that the defendants had reason to believe plaintiff realized the dangers associated with that particular mower. I do not suggest that the defendants could not adduce such evidence, but rather that such evidence does not exist in the record before this court. Without such evidence, I am unable to conclude that, as a matter of law, the defendants had no duty to warn plaintiff of the mower's dangerous condition. Accordingly, I would affirm the Court of Appeals decision reversing the trial court's entry of summary judgment, but under Restatement (Second) of Torts § 388, rather than § 390.

UTTER and DORE, JJ., and WINSOR, J. Pro Tem., concur with PEARSON, J.