FILED
COURT OF APPEALS
DIVISION II

2013 DEC 10 AM 9: 53

STATE OF WASHINGTON

BY _____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JOSHUA L. FAW, a single person, | No. 42840-7-II |
| Appellant, | |
| v. | |
| TARA MILLAM, individually; JEFFREY L. MILLAM, individually; and TARA MILLAM and JEFFREY L. MILLAM, formerly wife and husband, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents, | |
| and | |
| KYLE S. PARKER, individually; "JANE DOE" PARKER, individually; and KYLE S. PARKER and "JANE DOE" PARKER, husband and wife, and the marital community composed thereof; | |
| Defendants. | |

HUNT, J. — Joshua L. Faw appeals the superior court's summary judgment dismissal of

his tort claims against Tara Millam and her husband, Jeffrey L. Millam. Faw's claims arise from

a collision with a Toyota Paseo driven by Kyle S. Parker[1], given to him by Tara Millam. Faw

argues that (1) there were genuine issues of material fact about whether the Millams owned the

vehicle or had negligently entrusted it to Parker at the time of the accident, precluding summary

judgment; (2) the trial court erred in ruling admissible under ER 1003 the "Bill of Sale" (gifting

the Paseo from Tara Millam to Parker as an acceptable duplicate of the original; and (3) the trial

_____

[1] Faw's claim against Parker is not at issue in this appeal.

No. 42840-7-II

court erred in failing to address whether the Paseo was the Millams' community property. We affirm the superior court's summary judgment dismissal of Faw's claims against the Millams.[2]

FACTS

On August 3, 2009, Kyle S. Parker was racing another driver on a public street in Pierce County, driving a 1992 Toyota Paseo, which Tara Millam had given him several weeks earlier in Oklahoma. Parker's Paseo crossed the center line and struck Joshua Faw's oncoming vehicle, causing Faw numerous serious and permanent injuries, and disabling him for life. Parker, whose Washington driver's license had been previously suspended, pleaded guilty to a criminal charge of vehicular assault based on this incident and was sentenced to jail.

On January 19, 2010, Faw filed a personal injury action against Parker[3], "Jane Doe" Parker, Tara Millam, and "John Doe" Millam[4], alleging that, as the Paseo's owner, Tara[5] had negligently entrusted it to Parker. The Millams moved for summary judgment, arguing that they no longer owned the Paseo at the time of the accident. In support of their motion, Tara submitted a declaration, exhibits, and deposition statements asserting that (1) she was friends with Parker and his brother, who had helped her move from Washington to Oklahoma in February 2009, driving a U-Haul; (2) she and Parker had gone together to the Oklahoma Department of Licensing, surrendered their Washington driver's licenses, and received Oklahoma driver's

[2] Accordingly, we need not address Faw's other arguments.

[3] Although Faw's complaint referenced a "Jane Doe" Parker, nothing in the record before us reflects that Kyle Parker is or was married.

[4] Faw's original complaint referred to Tara Millam's former husband as "John Doe" Millam; but his second amended complaint refers to Tara's former husband as Jeffrey L. Millam.

[5] We use Tara Millam's first name for clarity as necessary. We intend no disrespect.

2

licenses; (3) she did not know that Parker's Washington driver's license had been suspended; (4) when the Parkers' van suffered an engine malfunction, she had purchased them a 1992 Toyota Paseo, which Tara drove only once; (5) on July 13, 2009, she had written a "bill of sale"[6] that purported to gift the Paseo to Kyle Parker,[7] Clerk's Papers (CP) at 174; (6) the Paseo and Kyle Parker were insured under her (Tara's) insurance policy when the Parker brothers drove it to Washington; and (7) on July 30, she had informed her insurer that she no longer owned the Toyota Paseo and instructed her insurer to remove the Paseo and Kyle Parker from her policy.[8] The Millams also submitted Parker's declaration that there were no conditions attached to Tara's gift of the Paseo to him and no expectations that he would return it to her.

The superior court granted summary judgment to the Millams and dismissed Faw's action against them for the following reasons: (1) under Oklahoma law (which controlled ownership of the Paseo), Parker was the owner at the time of the accident[9]; (2) there was "no evidence that Tara Millam knew or had any reason to know that Kyle Parker was reckless, heedless or incompetent in the operation of [the] automobile"; (3) under Washington law (which controlled whether the Millams were liable to third party Faw in Washington), Faw failed to raise a genuine

---

[6] The Millams presented a copy of this bill of sale to the court.

[7] Tara and Parker declared that the document submitted as a copy of the "bill of sale" was authentic and was a true copy of the original created by Tara Millam. CP at 14. The original "bill of sale" had been in the Paseo's glove compartment, that the police had seized the vehicle, and that the document had been destroyed when the car was crushed. CP at 54.

[8] The Millams also submitted an Allstate Insurance representative's declaration that Tara Millam had removed Parker and the Paseo from her insurance policy because she said that she no longer owned it.

[9] The superior court did not expressly rule on the admissibility of the "Bill of Sale," which purportedly reflected Tara's gift of the Paseo to Parker.

No. 42840-7-II

issue of material fact about Tara's knowledge of Parker's competence to drive; and (4) the Millams were not liable to Faw as a matter of law.[10] Verbatim Report of Proceedings (VRP) at 25. Faw appealed the superior court's summary judgment dismissal of his action against the Millams.[11]

ANALYSIS

I. SUMMARY JUDGMENT DISMISSAL OF CLAIMS AGAINST THE MILLAMS

Faw argues several grounds to support his contention that the superior court erred in dismissing his claims against the Millams. He contends that the Millams owned the Paseo, negligently entrusted it to Parker, and, therefore, were liable to Faw for his injuries. These arguments fail.

We review de novo summary judgment orders, engaging in the same inquiry as the trial court and treating all facts and inferences in the light most favorable to the nonmoving party, here, Faw. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is proper where there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law, and a reasonable person could reach only one conclusion. *Saddle Mountain Minerals, LLC v. Joshi*, 152 Wn.2d 242, 248-49, 95 P.3d 1236 (2004); *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 350, 588 P.2d 1346 (1979).

---

[10] Accordingly, the superior court did not reach the issue of whether the Paseo was the Millams' separate or community property.

[11] Our court initially treated Faw's notice of appeal as a petition for discretionary review under RAP 6.2. Our court commissioner later re-converted this petition to a notice of appeal.

4

A. No Third Party Liability Based on Vehicle Ownership

Faw first argues that, under either Oklahoma or Washington law,[12] the Millams should be held liable for his injuries because they were the owners of the Paseo when it collided with his vehicle. The record does not support this underlying factual assertion.

1. Oklahoma and Washington laws

To resolve choice-of-law problems in tort cases, "Washington has adopted the 'most significant relationship' rule." *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 259-60, 115 P.3d 1017 (2005) (quoting *Martin v. Goodyear Tire & Rubber Co.*, 114 Wn. App. 823, 828, 61 P.3d 1196 (2003)). "Under this approach, the rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Zenaida-Garcia*, 128 Wn. App. at 260 (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d. 577, 580, 555 P.2d 997 (1976)).

Here, although the accident occurred in Washington, the superior court ruled that the most significant relationship concerning ownership of the Paseo was in Oklahoma; thus, Oklahoma law applied. We agree. It was uncontroverted that Tara delivered the Paseo to Parker in Oklahoma and that Parker drove the Paseo in Oklahoma with an Oklahoma license before leaving for Washington. We agree with the superior court that conveyance of the Paseo occurred

---

[12] Faw argues that Oklahoma law controls in this case, but that the outcome would be the same even if Washington law was applied.

5

No. 42840-7-II

in Oklahoma, Oklahoma had the "'most significant relationship'"[13] with this conveyance, and, therefore, Oklahoma law governed ownership of the Paseo.[14]

### 2. Transfer of vehicle to Parker before leaving Oklahoma for Washington

Faw argues that, even if Tara had intended to transfer the Paseo to Parker, she failed to comply with Oklahoma's statutory requirements for vehicle transfers and, thus, remained the owner, liable to third parties such as Faw.[15] Faw notes, for example, the lack of evidence that Parker obtained insurance for the Paseo, as required by OKLA. STAT. tit. 47, § 1112(3)(a). This argument does not defeat the superior court's conclusion that Tara conveyed ownership of the Paseo to Parker. Even if Parker failed to obtain insurance, this failure would not have operated to transfer ownership of the Paseo or liability back to Tara.

---

[13] *Zenaida-Garcia,* 128 Wn. App. at 259-60 (quoting *Martin,* 114 Wn. App. at 828).

[14] We note, however, that our conclusion would be the same even if Washington law controlled, because both states follow the Uniform Commercial Code (UCC) for sales and inter vivos gifts. *In re Marriage of Zier,* 136 Wn. App. 40, 47, 147 P.3d 624 (2006) (citing *Sinclair v. Fleischman,* 54 Wn. App. 204, 207, 773 P.2d 101 (1989)) ("The elements of a completed gift are (1) an intention of the donor to give; (2) a subject matter capable of delivery; (3) a delivery; and (4) acceptance by the donee.") and *Cluck v. Ford,* 2007 OK CIV APP 3, 152 P.3d 279 (The elements of an inter vivos gift are "(1) a donor competent to make the gift, (2) freedom of will on his or her part, (3) an intention by the donor to make the gift, (4) a donee capable of accepting the gift, and (5) delivery by the donor and acceptance by the donee." (citing *Davis v. Nat'l Bank of Tulsa,* 1960 OK 151, 353 P.2d 482)).

[15] More specifically, Faw argues that the Millams failed (1) to sign a statement disclosing the odometer reading as required by OKLA. STAT. tit. 47, § 1107 and § 1112, (2) to sign and to notarize a release of interest and warranty of title as required by OKLA. STAT. tit. 47 § 1107(a), and (3) to deliver the signed and notarized certificate to Parker, the transferee. *See* Br. of Appellant at 15-16 (Faw's brief actually cites OKLA. STAT. tit. 47, § 1007 (governing parking for physically disabled persons), which we assume meant § 1107 (governing requirements for certificate holders in the event of sale or transfer of ownership of motor vehicle titles).

6

No. 42840-7-II

First, under Oklahoma law, it is not necessary for a vehicle transferee to obtain insurance on a newly acquired vehicle in order for the transferor to avoid liability. *See* OKLA. STAT. tit. 47, § 1107.[16] Second, although Faw is correct that the holder of a certificate of title is presumed to be the vehicle owner, this presumption is rebuttable. *See Heinrich v. Titus-Will Sales, Inc.*, 73 Wn. App. 147, 162, 868 P.2d 169 (1994). That Tara's name remained on the Paseo's title at the time of Parker's collision was insufficient to trigger her liability to Faw. Under both Oklahoma and Washington law, certificates of title are not necessary to establish ownership. *See* OKLA. STAT. tit. 12A, § 2-401[17]; *Heinrich*, 73 Wn. App. at 162.[18]

---

[16] OKLA. STAT. tit. 47, § 1107 requires "[t]he purchaser or transferee of the vehicle [to] present the assigned certificate of title and the insurance security verification to the vehicle to the Oklahoma Tax Commission, or one of its motor license agents." OKLA. STAT. tit. 47, § 1107. This statutory requirement obligated Parker, not Tara, to obtain insurance and, thus, had no bearing on the Millams' liability for the Paseo after its transfer to Parker.

[17] Under Oklahoma law, it is not necessary for the seller to deliver title before he or she conveys ownership: "[t]he sale of [an] automobile [is] complete upon delivery of the car with the intent to sell." *Medico Leasing Co. v. Smith*, 1969 OK 114, 457 P.2d 548, 551 (citing OKLA. STAT. tit. 12A, § 2-401); *see also Green v. Harris*, 2003 OK 55, 70 P.3d 866, 871 n.11 (certificates of title are "merely intended to protect against theft and facilitate recovery and aid in enforcement of motor vehicle regulation"; legal ownership of title is not dispositive of liability for negligent entrustment of a vehicle); *City Nat. Bank & Trust Co. v. Finch*, 205 OK 340, 237 P.2d 869, 872 (1951); *In re Foster*, 1980 OK 37, 611 P.2d 232, 234 ("[M]otor vehicle certificates of title in Oklahoma are documents of convenience rather than documents of ownership.").

[18] Washington courts have taken an even stronger stand, holding:
> [T]he transfer of a vehicle may be valid despite the failure to transfer the certificate properly. Title and registration certificates are only rebuttable prima facie evidence of automobile ownership. In [Washington] State, the [Uniform Commercial Code] provisions, not the certificate of title statutes, govern who holds title to a vehicle.

*Heinrich*, 73 Wn. App. at 162 (citations omitted); *see also Beatty v. Western Pac. Ins. Co.*, 74 Wn.2d 530, 542-43, 445 P.2d 325 (1968). And under Title 62A RCW, which codifies Washington's enactment of the Uniform Commercial Code, "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." RCW 62A.2-401(1).

7

Third, regardless of whether Oklahoma or Washington law applies, the record supports the trial court's conclusion that Tara gave the Paseo to Parker in Oklahoma, before he drove it to Washington and collided with Faw. Both Parker and Tara stated in their declarations that, shortly before Parker left for Washington, (1) Tara gave the Paseo to Parker, without conditions or expectation of return; and (2) she created and signed a "bill of sale" memorializing this transfer on July 13, 2009.[19] CP at 289. Consistent with this transfer of ownership, as previously noted, Tara contacted her insurance company, informed them that she no longer owned the vehicle, and removed both the Paseo and Parker from her policy. There is no disputed issue of material fact that Tara conveyed the Paseo to Parker before he left for Washington.

---

[19] This Bill of Sale stated, "I, Tara A. Millam do hereby give to Kyle S. Parker my 1992 Toyota Paseo License # 713AVU VIN # JT2EL45F7NOO85520 as a gift for the sum of $0.00." CP at 89. Tara further declared that she had given Parker the original "bill of sale" and had kept a copy for herself. CP at 289.

Although, as we explain in the next section of this analysis, the superior court neither expressly ruled nor relied on the admissibility of this document, we note that in its order of summary judgment, the superior court included this bill of sale in the list of documents it had considered in making its decision. Assuming, therefore, that the superior court considered this bill of sale, it would have been admissible at trial to show the parties' intent to convey the Paseo from Tara to Parker. (Under ER 1002, a party must produce the original of the document it seeks to admit in order to prove its contents. But, because the bill of sale was admissible to show the parties' intent, rather than to prove the document's operable terms, ER 1002 would not prohibit the superior court from admitting a copy in lieu of the original.)

The language of the bill of sale strongly supported Tara's statement in her declaration that she intended to give the Paseo to Parker:

> The elements of a completed gift are (1) an intention of the donor to give; (2) a subject matter capable of delivery; (3) a delivery; and (4) acceptance by the donee.

*In re Zier*, 136 Wn. App. at 47 (citing *Sinclair*, 54 Wn. App. at 207). After purchasing the Paseo, she delivered it to Parker, who accepted it by taking possession and driving it to Washington. Nothing in the record suggests that Tara expected Parker to return the Paseo or that there were any conditions attached to her gift; Parker's declaration also supports the conclusion that the Paseo was a gift from Tara to him and that he was not expected to return it. And again, as we explain in the next section, Faw failed to support his allegations that the "Bill of Sale" was a ruse to defeat liability. Br. of Appellant at 9.

8

### 3. Bill of Sale

In his opening brief, Faw assigns error to the superior court's "admission" of the document entitled "bill of sale" into evidence. Br. of Appellant at 4. He asserts that "the Bill of Sale was manufactured by the defendants after the accident in an attempt to avoid liability"[20] and a copy was inadmissible under ER 1002, which requires the original. We do not address this issue for several reasons.

Although Faw briefly questioned the admissibility and authenticity of the "Bill of Sale" below, he provided no facts or authority to support his argument below, and he neither requested nor received from the superior court a definitive ruling on the admissibility of the bill of sale. On the contrary, rather than addressing its admissibility on the record,[21] the superior court ruled, "There's no evidence or reasonable inference that's before the Court that anybody owned the vehicle on the date of the accident, August 3rd, 2009, but Kyle Parker."[22] VRP at 25.

In general, we do not review "a matter on which the trial court did not rule." *Meresse v. Stelma*, 100 Wn. App. 857, 867, 999 P.2d 1267 (2000) (citing RAP 2.4(a)). *See also* RAP 2.5(a). Instead, we usually limit our review to matters on which the trial court did rule. *Snohomish County Builders Ass'n v. Snohomish Health Dist.*, 8 Wn. App. 589, 593, 508 P.2d 617 (1973).

---

[20] Br. of Appellant at 9.

[21] As we have previously noted, the only suggestion that the superior court may have impliedly ruled on the bill of sale was its inclusion in its summary judgment list of documents considered.

[22] Despite Faw's unsupported claim that the "Bill of Sale" was fraudulent, Br. of Appellant at 9, as we have previously noted, solid evidence in the record supports the superior court's finding that Parker was the owner of the Paseo at the time of his collision with Faw.

Here, Faw did not ask the superior court to strike the bill of sale; therefore, we do not further consider this assignment of error.

We hold, therefore, that there was no material issue of fact that Tara conveyed ownership of the Paseo to Parker as a valid inter vivos gift before he drove it to Washington and collided with Faw.[23] Thus, Faw's third party ownership liability claim against the Millams fails because they did not own the Paseo at the time of the accident.

B. No Third Party Liability Based on Negligent Entrustment

Faw next argues that the superior court erred by dismissing his negligent entrustment claim. His theory is that, even if Tara was no longer the owner, (1) Parker was incompetent, as a matter of law, to operate the vehicle in Washington, a fact about which Tara was aware when she entrusted the vehicle to Parker, because she knew that his Washington driver's license was suspended and that he had a criminal record; and (2) thus, the Millams should be held liable for Parker's having caused Faw's injuries. Faw, however, presented no evidence below to support these factual assertions, so this argument also fails.

The relatively narrow negligent entrustment theory of liability arises out of the negligence chain of causation principle:[24]

---

[23] Faw also argues that a transfer of a vehicle between parties to a contract may be recognized as valid between themselves, but not as to a third party. Br. of Appellant at 20. Because he cites no authority to support this proposition, we do not further consider it. RAP 10.3(a)(6).

[24] The general rule in Washington is that "[i]f the defendant's original negligence continues and contributes to the injury," as it might when a transferor negligently entrusts a vehicle, "the intervening negligence of another is an additional cause. It is not a superseding cause and does not relieve the defendant of liability." *Travis v. Bohannon*, 128 Wn. App. 231, 242, 115 P.3d 342 (2005) (citing *Doyle v. Nor-West Pac. Co.*, 23 Wn. App. 1, 6, 594 P.2d 938 (1979); *Eckerson v. Ford's Prairie Sch. Dist. No. 11*, 3 Wn.2d 475, 483-84, 101 P.2d 345 (1940)).

> "[A]n owner or other person in control of a vehicle and responsible for its use, who entrusts the vehicle to another, may be held liable for damages resulting from the use of the vehicle, . . . *where he knew, or should have known in the exercise of ordinary care, that the person to whom the vehicle was entrusted [is reckless, heedless, or incompetent].*"

*Cameron v. Downs*, 32 Wn. App. 875, 878, 650 P.2d 260 (1982) (emphasis added) (quoting *Hulse v. Driver*, 11 Wn. App. 509, 514-15, 524 P.2d 255 (1974)). This theory may apply even if the actual owner of the vehicle is not the registered owner. *Cameron*, 32 Wn. App. at 878 (citing RESTATEMENT (SECOND) OF TORTS § 390 (1965)).

Regardless of whether Parker's license to operate a vehicle in Washington was or was not actually suspended at the time of the accident,[25] the record does not support Faw's assertions that Tara knew about this suspended license, Parker's criminal record, or any propensity to drive recklessly, heedlessly, or incompetently, essential facts for establishing the Millams' liability under a negligent entrustment theory. Faw points only to Parker's deposition answer to an ambiguous compound question to support his assertion that Tara knew his Washington license had been suspended.[26] Faw ignores Tara's later clarification that she knew only that Parker had

---

[25] In his deposition, Parker testified that his Washington license had been suspended "[a] couple years ago" but that he was licensed in Oklahoma. CP at 37.

[26] *See* the following excerpts from Parker's deposition:
> [COUNSEL] Now, I presume that Tara Millam knew you didn't have a Washington license; is that correct?
> [PARKER] Yes.

CP at 37.
> [COUNSEL] Was [Jeff Millam] aware that you were unlicensed—or you were suspended to drive a vehicle in Washington?
> [PARKER] No.
> [COUNSEL] But Tara was?
> [PARKER] Yes.

CP at 53. Parker further testified that Tara knew he did not have a Washington license and that she knew he had an Oklahoma license when she gave him the Paseo.

11

surrendered his Washington license when he obtained his Oklahoma license and that she had no knowledge that his Washington driving privileges had been suspended.[27] Moreover, Faw offered no competent evidence below to support his assertion that Tara knew or should have known that Parker was incompetent to drive. These unsupported assertions are insufficient to raise genuine issues of material fact to defeat summary judgment. *KS Tacoma Holdings, LLC v. Shorelines Hearings Bd.*, 166 Wn. App. 117, 126, 272 P.3d 876, *review denied*, 174 Wn.2d 1007 (2012).

Moreover, even taking the facts in the light most favorable to Faw on summary judgment, the record shows that Tara not only did not know about Parker's suspended license, but also had reason to believe that Parker was a competent driver: (1) She had witnessed his driving first hand when he and his brother had previously driven a U-haul trailer to help her move from

---

[27] Contrary to Faw's assertions because of counsel's compound question, Tara's deposition statements do *not* establish that she knew Washington State had suspended Parker's driver's license. During Tara's deposition, she stated that she knew only that Parker had surrendered a Washington license to receive an Oklahoma license; she denied knowing that Parker's license had been suspended in Washington. *See, e.g.*, the following exchange between Faw's counsel and Tara:

> [COUNSEL]  Well, my understanding is that Kyle Parker was suspended from his privilege to drive in the state of Washington at that time, and that is his testimony.
>
>  Do you have any facts to dispute that?
>
> [TARA]  The only fact I have is that he surrendered a valid Washington license to get an Oklahoma license.
>
> [COUNSEL]  But you don't know it's valid, do you?
>
> [TARA]  No, sir, I don't, but I would imagine that the state of Oklahoma would have noticed.
>
> [COUNSEL]  Well, Mr. Parker specifically said you knew he was suspended from driving in Washington, so you are contradicting his testimony; is that correct?
>
> [. . . .]
>
> [TARA]  All I know is we went down to the Department of Licensing at the same time. We both surrendered Washington driver's licenses and were given our Oklahoma licenses.

CP at 170-71.

Washington to Oklahoma, and (2) together, she and Parker had turned in their respective Washington driver's licenses and had obtained Oklahoma licenses (demonstrating only that she knew he no longer had a Washington license but believed that he had a valid Oklahoma license when she gave him the Paseo before he drove it to Washington).

"[I]t is not the function of an appellate court to substitute its judgment for that of the trial court or to weigh the evidence or the credibility of witnesses." *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980) (citing *Beeson v. Atlantic-Richfield Co.*, 88 Wn.2d 499, 563 P.2d 822 (1977)). Even viewing the evidence in the light most favorable to Faw, we hold that the record contains no genuine issue of material fact about whether Tara knew, or had reason to know, that Parker was a reckless or incompetent driver. *See City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 256, 262 P.3d 1239 (2011) (citing *Tae T. Choi v. Sung*, 154 Wn. App. 303, 313, 225 P.3d 425, *cert. denied*, — U.S. —, 131 S. Ct. 925, 178 L. Ed. 2d 752 (2011)).

Accordingly, we hold that Faw raised no genuine issue of material fact and, therefore, the superior court properly granted the Millams' summary judgment dismissal of Faw's negligent entrustment claim.

## II. MILLAMS' MARITAL SEPARATION

Finally, Faw argues that the Paseo should be considered community property of the Millams and that we should reject their claims that their marriage was defunct at the time of the Paseo's purchase and Parker's accident. Because the superior court ruled that the Millams neither owned the Paseo nor were liable for Faw's injuries as a matter of law, it did not reach this

No. 42840-7-II

issue. Because we affirm the superior court, we similarly do not reach this issue.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Bjorgen, J.

14