Susan CASEBOLT, as mother and next friend of Lauren Casebolt and Lindsey Casebolt; and Susan Casebolt, individually, Petitioners,

v.

William COWAN, individually; and William Cowan d/b/a Milco Construction Company, Respondents.

No. 91SC69.

Supreme Court of Colorado,
En Banc.

April 6, 1992.

Rehearing Denied May 11, 1992.

Law Offices of Robert A. Weinberger, P.C., Thomas L. Kanan, Daniel B. Galloway, Robert A. Weinberger, Denver, for petitioners.

Johnson, Oldham & Angell, P.C., Richard Lee Angell, Denver, for respondents.

Anderson, Campbell and Laugesen, P.C., Richard W. Laugesen, Denver, for amicus curiae Colorado Defense Lawyers Ass'n.

Justice LOHR delivered the Opinion of the Court.

This case presents issues concerning the existence, nature, and scope of any duty owed by the owner of an automobile to a borrower of that vehicle to prevent injuries to the borrower resulting from operation of the vehicle by the borrower after consuming alcoholic beverages. These issues arise from a wrongful death action brought by the wife and children of Lindel Casebolt, who was killed in a collision when he drove a borrowed automobile eastward into a westbound lane of traffic after drinking. The plaintiffs asserted liability based on a theory of negligent entrustment. The district court granted the motion for summary judgment made by the defendants—the corporation [1] that owned the vehicle driven by Casebolt and the corporate officer who granted Casebolt permission to drive it. The decision was based on the district court's conclusion that the defendants owed no duty to Casebolt to protect him from his own abuse of alcohol. The Colorado Court of Appeals affirmed. *Casebolt v. Cowan*, 809 P.2d 1080 (Colo.App.1990). We conclude that summary judgment was improper because genuine issues of material fact must be resolved before it can be determined whether the defendants owed a duty of care to Casebolt. Consequently, we reverse the judgment of the court of appeals.

I.

Susan Casebolt is the widow of Lindel Casebolt. She brought this action individually and on behalf of the couple's two minor children against William Cowan individually and doing business as Milco Construction Company (Milco), seeking damages for the wrongful death of her husband. The plaintiffs asserted that the defendants breached a duty to Casebolt, Milco's employee, by failing to prevent him from driving a vehicle owned by Milco, and loaned to him by Cowan, after Cowan learned that Casebolt was consuming alcoholic beverages. The plaintiffs averred that Cowan knew that Casebolt drank alcohol to excess, was intoxicated, and would be using the vehicle for his transportation needs. After the parties engaged in some discovery, the defendants moved for summary judgment, asserting, among other things, that they had no duty to Casebolt to protect him from the consequences of his own intoxication.

The district court ruled that the defendants had no duty to protect Casebolt from his own abuse of alcohol and therefore granted summary judgment for the defen-

---

**1.** The amended complaint designates William Cowan, doing business as Milco Construction Company, as a defendant. In describing the parties, the amended complaint refers to the "Defendant Milco Construction Company," avers that it is a Colorado corporation "in suspension as of September 3, 1987," and refers to "William Cowan, d/b/a Milco Construction Company." We assume that the corporation has thereby been named as a defendant, but it is unnecessary to resolve that question definitively for the purpose of this opinion.

dants.[2] On appeal, the Colorado Court of Appeals affirmed. *Casebolt*, 809 P.2d 1080. The appellate court characterized the duty the plaintiffs sought to establish as a duty of a person entrusting a motor vehicle to another "to exercise control at any time after the original entrustment of a motor vehicle, if there is any basis upon which to infer that some harm may occur at some later time to the entrustee." *Id.* at 1081. Relying particularly on the "facts" that Cowan did not furnish the alcoholic beverages that ultimately intoxicated the decedent, did not observe him when he was visibly intoxicated, and was not in a position to exercise control at the time he became intoxicated, the court of appeals found no basis to impose any duty on the defendants. *Id.* We granted certiorari to review this determination.

## II.

We begin our analysis by summarizing familiar principles that govern resolution of motions for summary judgment, setting forth the pertinent facts that are established by the record, and noting the relevant facts that remain in dispute.

### A.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo.1988); *United States v. Jesse*, 744 P.2d 491, 503 (Colo. 1987). In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *E.g., Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 736 (Colo.1991); *Tapley v. Golden Big O Tires*, 676 P.2d 676, 678 (Colo.1983); *see* C.R.C.P. 56(c). A court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in determining whether to grant a motion for summary judgment. C.R.C.P. 56(c). As we have often observed, summary judgment is a drastic remedy, to be granted only when there is a clear showing that the controlling standards have been met. *E.g., Mancuso*, 818 P.2d at 736; *Churchey*, 759 P.2d at 1339–40.

### B.

The record demonstrates that there is no genuine issue as to the existence of any of the facts that we now set forth, all pertaining to the times of the accident resulting in Casebolt's death and the events leading up to it. Milco Construction Company was a Colorado corporation, and William Cowan was its president. Casebolt was employed by Milco as a construction worker. On the evening of July 16, 1987, Casebolt, who lived in the Denver metropolitan area, asked Cowan for permission to drive a car owned by Milco from Denver to the site of a Milco construction project in Idaho Springs and back so that he could work on the project on July 17. Cowan granted permission. Casebolt drove the Milco vehicle to Idaho Springs on July 17 and worked until the project was completed about noon. Cowan was present. After the job was finished, Casebolt and the other workers consumed some beer at the job site. Cowan acknowledged that Casebolt had one beer at that time. Cowan, Casebolt, and other Milco workers then went to lunch in Idaho Springs, and Casebolt drank a beer with lunch. After eating, Casebolt went with some of his luncheon companions to the bar area of the restaurant. The men told Cowan that they were going to have a beer after lunch and asked him to join them. Cowan declined and left the restaurant. He stated in his affidavit that he observed nothing about Casebolt's behavior to indicate he was intoxicated at that time. Although Cowan assumed Casebolt would drive the Milco car back to his home, Cowan did not suggest that Casebolt

---

**2.** The district court held that there were genuine issues of material fact concerning proximate cause and comparative negligence but that absence of duty made summary judgment appropriate notwithstanding those factual issues.

stop drinking and took no action to revoke or condition his permission to use the car. Cowan did not see Casebolt again. At about 6:30 p.m. Casebolt left Idaho Springs and drove the Milco vehicle eastward into a westbound lane of highway traffic. A collision ensued, and Casebolt later died of the injuries he sustained in the accident. The accident was caused by Casebolt's intoxication.

Other facts are in dispute. Cowan had some knowledge that Casebolt had experienced difficulties when consuming alcoholic beverages, but the extent of that knowledge is disputed. Ned Slocum, a coworker of Casebolt on some Milco construction projects, executed an affidavit relating an incident in 1986 when he, Cowan, Casebolt, and another went to a bar, Casebolt became "obnoxious, rowdy, and drunk" after consuming several beers, and Slocum took Casebolt home because he had too much to drink. In his affidavit, Slocum stated that in April 1987, when working for Cowan, the latter asked about that 1986 occasion and Slocum said that Casebolt "had problems with handling his alcohol and that when [Casebolt] drank, he became uncontrollable." In response to a question from Cowan, Slocum said that scratches Casebolt had received on that occasion resulted from a physical altercation between Slocum and Casebolt, because "that is how [Casebolt] acted when he was drinking." Slocum's affidavit further stated that

> [d]uring this conversation, Mr. Cowan and I agreed that [Casebolt] could not handle his liquor and that, even with a small amount of alcohol, [Casebolt's] personality would obviously change. Mr. Cowan said that, after a few beers, [Casebolt] was a "wild man." During this conversation, Mr. Cowan told Randy Harp and other employees not to take [Casebolt] drinking because he drank excessively and became uncontrollable.

In Cowan's deposition, however, except for information gleaned on the occasion in 1986 described by Slocum, Cowan denied any knowledge prior to the accident that Casebolt was particularly susceptible to becoming intoxicated upon consuming alcoholic beverages. Cowan testified that he did have a conversation with Slocum about a fight Casebolt had engaged in after drinking, but Cowan said this conversation took place on the day of Casebolt's funeral. Thus, Casebolt's drinking habits and behavior, the extent of Cowan's knowledge of such matters, and particularly Cowan's knowledge of any propensity of Casebolt to drink and drive are not developed in the record. The amount of beer consumed by Casebolt before, during, and after lunch while Cowan was present is also not clearly established by the record,[3] and the available evidence is susceptible of various inferences.

### III.

#### A.

The amended complaint asserts a claim in negligence under a theory of negligent entrustment. The district court applied general negligence principles in arriving at the conclusion that the defendants had no duty to Casebolt. The court of appeals followed a negligent entrustment analysis and reached the same conclusion. *Casebolt*, 809 P.2d at 1081. In their briefs on certiorari review, the plaintiffs rely on negligent entrustment to support reversal of summary judgment.

#### B.

We begin our analysis by considering the nature and scope of the doctrine of negligent entrustment. Negligent entrustment is a part of the general law governing liability for negligence. As the Michigan Supreme Court observed in *Moning v. Alfono*, the doctrine of negligent entrustment is "one of the many specific rules concerning particular conduct that have evolved in the application of the general standard of care." 400 Mich. 425, 254 N.W.2d 759, 767 (1977). Thus, it is instructive to review general negligence principles in order to

---

**3.** As earlier noted, the defendants concede that Casebolt consumed at least certain specified amounts of beer.

establish the context for recognition of the doctrine of negligent entrustment and the relationship of negligent entrustment to broader principles of liability for negligence.

The elements of a claim of negligence consist of the following: a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury. *E.g., Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986); *Franklin v. Wilson,* 161 Colo. 334, 336, 422 P.2d 51, 51 (1966). The standard of care that must be met in order to satisfy a recognized duty and thereby avoid breach is that of reasonable care in light of the apparent risk. *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 318 (Colo.1980).

The initial question of whether a defendant owes a plaintiff a duty to act or refrain from acting in order to avoid injury is a question of law to be determined by the court. *E.g., Smith v. City and County of Denver,* 726 P.2d 1125, 1127 (Colo.1986); *Metropolitan Gas Repair,* 621 P.2d at 317. In determining whether a duty should be recognized, a court must consider many factors, "including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Smith,* 726 P.2d at 1127; *accord, e.g., Observatory Corp. v. Daly,* 780 P.2d 462, 466 (Colo.1989); *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987). The foregoing list of factors is not exclusive, no single factor controls, "and the question of whether a duty should be imposed in a particular case is essentially one of fair-

ness under contemporary standards— whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo. 1987). Thus, "[a] court's conclusion that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *Whitlock,* 744 P.2d at 57 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984) (hereinafter "*Prosser*")) (bracketed material added in *Whitlock*).

The doctrine of negligent entrustment provides a framework for resolution of the issue of duty, and also identifies criteria for assessing exercise of reasonable care in light of the apparent risk under particular circumstances. The negligent entrustment doctrine in its general form is set forth in section 308 of the *Restatement (Second) of Torts* (1965) (hereinafter "*Restatement*") as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*See also Restatement* §§ 282, 308 (defining negligence as conduct that falls below the legal standard of care (§ 282) and specifying that particular conduct often described as negligent entrustment constitutes negligence (§ 308)).

The Colorado Court of Appeals explicitly adopted the doctrine of negligent entrustment as a theory of liability in *Hasegawa v. Day,* 684 P.2d 936, 939 (Colo.App.1983) (citing and quoting § 308).[4] In several cases

---

4. In *Hasegawa,* a minor child who had been adjudicated delinquent and committed to the custody of the Colorado Department of Institutions was released to his parents on a "leave of absence." Under the conditions of the minor's release, his father had the primary right and responsibility to control the son, and the son had the duty and obligation to follow his father's directions. The father provided money to

the son for the purchase of an automobile. The evidence was in conflict whether this represented repayment of a loan, but the funds were under the parents' control. Title to the car was taken in the son's name, and he paid the expenses of operation and maintenance. The father's liability policy provided insurance coverage. The son had an extensive juvenile record, including offenses involving abuse of drugs and

decided since *Hasegawa,* the court of appeals has applied negligent entrustment analysis. *Hilberg v. F.W. Woolworth Co.,* 761 P.2d 236, 238–39 (Colo.App.1988); *Lahey v. Benjou,* 759 P.2d 855, 857 (Colo.App. 1988); *Butcher v. Cordova,* 728 P.2d 388, 389–91 (Colo.App.1986); *Baker v. Bratrsovsky,* 689 P.2d 722, 723–24 (Colo.App. 1984); *cf. United Fire & Casualty Co. v. Day,* 657 P.2d 981, 982 n. 1 (Colo.App.1982) (negligent entrustment doctrine recognized but not part of the analysis in insurance policy coverage case), *overruled on other grounds by Northern Ins. Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989). The acceptance of negligent entrustment analysis by the Colorado courts was forecast by the decision of the Tenth Circuit Court of Appeals in *Douglass v. Hartford Ins. Co.,* 602 F.2d 934 (10th Cir.1979), in which that court predicted that Colorado would recognize a complaint based on negligent entrustment. *Id.* at 936–37.

■ We have not previously had occasion to consider directly whether the negligent entrustment doctrine is part of the law of this state. In *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984), however, we acknowledged in passing that "Colorado courts recognize negligent entrustment as an actionable claim," citing *Hasegawa. Id.* at 1140 n. 3. Moreover, in *Dickens v. Barnham,* 69 Colo. 349, 194 P. 356 (1920), we recognized a tort in circumstances arguably fitting the doctrine of negligent entrustment, although we did not use the term "negligent entrustment" in analyzing the case.[5] *See Douglass,* 602 F.2d at 937, and *Hasegawa,* 684 P.2d at 939, both relying in part on *Dickens* in recognizing the negligent entrustment doctrine. We now confirm that the doctrine of negligent entrustment is part of the law of negligence in this state. Section 308 of the *Restatement* provides guidance for our use in determining the applicability and scope of the doctrine.

The plaintiffs rely as well on section 390 of the *Restatement,* concerning the liability of suppliers of chattels, as a further refinement of the negligent entrustment theory. Section 390 provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Comment b to section 390 describes this rule as a special application of the rule stated in section 308. Although the court of appeals has "adopted" section 390 in an unpublished case, *Roberts v. Niswonger,*

---

alcohol. The Department of Institutions had evaluated him as impulsive, anti-social, and possibly a sociopath. The son drove the car when intoxicated, collided with another vehicle, and caused injuries to a third party, who sought recovery against the parents under a theory of negligent entrustment. The district court granted summary judgment for the defendants. The court of appeals reversed. It cited § 308 of the *Restatement* and set forth the elements of a claim for negligent entrustment as follows:

> The elements of negligent entrustment as applicable here are: 1) a supplier permitting a third party to use a thing or engage in an activity; 2) which is under the control of the supplier; and 3) the supplier giving such permission either knowing or having reason to know that the third party intends or is likely to use the thing in such a manner as to create an unreasonable risk of harm to others.

*Hasegawa,* 684 P.2d at 939. The court of appeals held that there was sufficient evidence to create questions of fact whether the father had actual control of the vehicle, whether the son drove on the occasion of the accident with the tacit knowledge and approval of the father, and whether the parents knew or had reason to know that their son was likely to use the automobile in such a manner as to create an unreasonable risk of harm to others.

The statement of the elements of the claim in *Hasegawa* creates some ambiguity concerning whether control must continue to the time of the act of the entrustee causing the injury. In this opinion we hold that it need not. *See* part III C(1), below.

5. *See Boyd v. Close,* 82 Colo. 150, 155, 257 P. 1079, 1081 (1927) (indicating liability for relinquishing control of vehicle to intoxicated person). *But see Otoupalik v. Phelps,* 73 Colo. 433, 216 P. 541 (1923) (sustaining demurrer to complaint alleging negligence in lending automobile to person lender knew to be a reckless driver).

87CA0881 (Colo.App. Apr. 20, 1989), we have never had occasion to consider whether section 390 correctly reflects the common law of this state.

Section 390 establishes a framework for examining the entrustment of a vehicle to an individual who presents an unreasonable risk of drinking and driving, based either on known propensity or intoxication on the occasion of the entrustment. The framers of section 390 specifically envisioned its application to cases of intoxicated entrustees. Illustration 7 states:

> A, who makes a business of letting out boats for hire, rents his boat to B and C, who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or to collide with other boats. B and C by their drunken mismanagement collide with the boat of D, upsetting both boats. B, C, and D are drowned. A is subject to liability to the estates of B, C, and D under the death statute, although the estates of B and C may also be liable for the death of D.

Other jurisdictions apply section 390 to instances where the entrustee's incompetence to operate a vehicle centers on or includes the consumption of alcohol. *E.g.,* *Blake v. Moore,* 162 Cal.App.3d 700, 208 Cal.Rptr. 703, 707–08 (1984); *Gorday v. Faris,* 523 So.2d 1215, 1219 (Fla.App.1988); *Snowhite v. State,* 243 Md. 291, 221 A.2d 342, 355 (1966); *Lombardo v. Hoag,* 237 N.J.Super. 87, 566 A.2d 1185, 1190 n. 4 (1989); *Cameron v. Downs,* 32 Wash.App. 875, 650 P.2d 260, 262 (1982). This accords with the general understanding that driving while intoxicated presents an unreasonable risk of physical harm to the driver and others.

Thus, we believe section 390 provides a basis for resolving the issues of duty (whether a supplier of a chattel owes any obligation to a person incurring physical harm from the use of the chattel by the person to whom it is supplied) and the specific standard of care (the criteria for assessing reasonable care in light of apparent risk) in the context of supplying chattels for the use of others. These two issues are inextricably intertwined in section 390. Being mindful of the policy considerations relevant to imposition of duty, *see, e.g., Smith,* 726 P.2d at 1127, we are satisfied that section 390—as a particular application of the more general rule of section 308—provides a useful analytical framework for addressing these issues in the present case.

In electing to utilize sections 308 and 390 of the *Restatement* to guide us in our analysis, we follow a path already taken by a number of other states that have employed, approved, or adopted [6] those *Restatement* rules as part of their negligence jurisprudence. *See Keller v. Kiedinger,* 389 So.2d 129, 131–33 (Ala.1980) (applying § 390); *Blake,* 208 Cal.Rptr. at 707–08 (applying § 390); *King v. Petefish,* 185 Ill. App.3d 630, 133 Ill.Dec. 636, 541 N.E.2d 847, 850 (1989) (recognizing negligent entrustment under §§ 308 and 390); *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76, 83 (1981) (applying § 390); *Moning,* 254 N.W.2d at 767 (citing § 390 with approval); *Axelson v. Williamson,* 324 N.W.2d 241, 243–44 (Minn.1982) (citing § 390 with approval); *Bahm v. Dormanen,* 168 Mont. 408, 543 P.2d 379, 381–82 (1975) (analyzing negligent entrustment case under §§ 308 and 390); *Lombardo,* 566 A.2d at 1186 (citing § 308 with approval); *McCarson v. Foreman,* 102 N.M. 151, 692 P.2d 537, 541–42 (N.M.App.1984) (applying § 308); *Robinson v. Reed–Prentice Division,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440, 446 (1980) (citing § 390 with approval); *First Trust Co. v. Scheels Hardware,* 429 N.W.2d 5, 8–9 (N.D.1988) (approving § 390 as appropriately summarizing law); *Vince v. Wilson,* 151 Vt. 425, 561 A.2d 103, 104–05 (1989) (citing § 390 with approval); *Bernethy v. Walt Failor's, Inc.,* 97 Wash.2d 929, 653 P.2d 280, 282–83 (1982) (adopting § 390); *Huggins v. Tri–County Bonding*

---

**6.** We believe it would be misleading to use the word "adopt" as applied to our reliance on the *Restatement* rules. We consider those rules appropriate for analysis of the present case without holding that they would necessarily apply to all fact situations that could be construed to come within their ambit.

*Co.,* 175 W.Va. 643, 337 S.E.2d 12, 17 (1985) (citing § 308 with approval); *Bankert v. Threshermen's Mutual Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150, 152–53 (1983) (applying § 308 and common law negligence); *cf. Flieger v. Barcia,* 674 P.2d 299, 301 (Alaska 1983) (negligent entrustment recognized under common law); *Pugmire Lincoln Mercury, Inc. v. Sorrells,* 142 Ga. App. 444, 236 S.E.2d 113, 114 (1977) (recognizing negligent entrustment as theory of recovery); *Lopez v. Langer,* 114 Idaho 873, 761 P.2d 1225, 1227–29 (1988) (applying negligent entrustment principles under common law); *McCart v. Muir,* 230 Kan. 618, 641 P.2d 384, 387–88 (1982) (applying negligent entrustment under common law); *Green v. Texas Elec. Wholesalers, Inc.,* 651 S.W.2d 4, 6–7 (Tex.Ct.App.1982) (applying negligent entrustment as common law doctrine).

We emphasize, however, that our reliance on sections 308 and 390 of the *Restatement* today is not meant to impose a rigid, formalistic analysis on entrustment cases. Although the very purpose of the doctrine of negligent entrustment is to establish criteria by which to resolve the difficult issues of duty and breach when negligent entrustment elements are established, the *Restatement* anticipates some fluidity through its employment of the term "unreasonable risk" in both section 308 and section 390. Only if the risk of harm resulting from the entrustment can be characterized as "unreasonable" are the standards of sections 308 and 390 satisfied. *See Butcher,* 728 P.2d at 391 (evaluating "unreasonable risk" under § 308).

### C.

■ We now apply the negligent entrustment principles in sections 308 and

390[7] to the facts of this case to determine whether summary judgment was proper. It is undisputed that Cowan supplied the Milco vehicle to Casebolt. Under section 390 it is clear as well that an entrustee can recover for physical harm to himself resulting from a negligent entrustment. *See* n. 7 at page 359 of this opinion. The rights of the plaintiffs to recover are derivative under *Casebolt.* § 13–21–202, 6A C.R.S. (1987).

Two legal issues and one factual issue remain to be resolved in order to decide whether summary judgment was appropriate. The first issue relates to Cowan's right and ability to control the use of the vehicle at the relevant time. The second is whether public policy precludes recognition of liability to Casebolt when his own voluntary intoxication caused the accident that resulted in his death. The third is whether there is a genuine issue of material fact whether Cowan had reason to know at the relevant time that Casebolt was likely to drive while intoxicated and thereby create an unreasonable risk of physical harm to himself.

### 1.

■ A question central to the applicability of negligent entrustment is whether the supplier must have the right and ability to exercise control at the time of the negligent act of the entrustee resulting in injury or whether control at the time the chattel is supplied is sufficient. Cases from other jurisdictions measure control at the time the chattel is supplied, the initial moment of entrustment. *E.g., Kahlenberg,* 431 A.2d at 83–84; *Vince,* 561 A.2d at 105; *Huggins,* 337 S.E.2d at 17; *Green,* 651 S.W.2d at 7.

---

**7.** The court of appeals did not employ § 390 in its analysis. Instead, it relied on *Hasegawa v. Day,* 684 P.2d 936 (Colo.App.1983), and *Butcher v. Cordova,* 728 P.2d 388 (Colo.App.1986), which are based upon the general principles of negligent entrustment set forth in § 308 of the *Restatement.* The court declined to extend the negligent entrustment rule of § 308 to include protection against harm to the entrustee. Under § 390, however, an entrustee can recover for damages resulting from negligent entrust-

ment. § 390 expressly recognizes that one who negligently supplies a chattel for the use of another likely to use the chattel in a manner involving unreasonable risk of physical harm "to himself and others ... is subject to liability for physical harm resulting to them." Illustration 7 to § 390, quoted at page 358 of this opinion, confirms that the drafters intended to encompass the entrustee within the group to whom the duty is owed.

As the Maryland court observed in *Kahlenberg*, in a donor-donee context, the negligence of the supplier consists of furnishing the chattel with the requisite knowledge. "[S]ince a donor would ordinarily relinquish any right to permit and power to prohibit the use of the chattel upon its delivery to the donee and consummation of the gift, the right to permit and the power to prohibit the use of the chattel, after the transfer and at the time of the injury, would not ordinarily be a *sine qua non* of liability." 431 A.2d at 83. The *Kahlenberg* approach squares with traditional understanding of the principles underlying negligent entrustment. " 'Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle ....' " *Mettelka v. Superior Court*, 173 Cal.App.3d 1245, 219 Cal. Rptr. 697, 698 (1985) (quoting 5A Am.Jur. *Automobiles and Highway Traffic* § 580, pp. 590–91 (1956)); *accord, e.g., Bruck v. Jim Walter Corp.*, 470 So.2d 1141, 1143 (Ala.1985); *Brady v. B & B Ice Co.*, 242 Ky. 138, 45 S.W.2d 1051, 1053 (1931); *Stafford v. Far-Go Van Lines, Inc.*, 485 S.W.2d 481, 486 (Mo.App.1972); *Williamson v. Eclipse Motor Lines, Inc.*, 145 Ohio St. 467, 62 N.E.2d 339, 341 (1945); *see also* 7A Am.Jur.2d *Automobiles & Highway Traffic* § 643, p. 872 (1980)). J. Lee & B. Lindahl, *Modern Tort Law, Liability & Litigation* § 33.01 (1990 & Supp.1991).

We are persuaded by the approach of other jurisdictions that we need look no further than the initial point of entrustment to determine whether a supplier acted negligently. Comments in the Colorado Court of Appeals' decisions in *Hasegawa*

and *Hilberg* suggest that a subsequent ability to control the user of the chattel or the manner in which the chattel is used represents an essential element of the negligent entrustment theory. *Hilberg*, 761 P.2d at 238; *Hasegawa*, 684 P.2d at 939.[8] However, for the reasons outlined above, we reject subsequent control as an essential element of negligent entrustment.[9] To the extent that *Hasegawa* and *Hilberg* require subsequent control, we overrule them. In the present case, however, the plaintiffs do not assert that Cowan was negligent when he initially permitted Casebolt to use the vehicle. Instead, they contend that a separate duty may arise based on a subsequent ability to control the automobile.

■ According to the plaintiffs, if Cowan acquired information that Casebolt was likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself or others at a time when Cowan had the right and ability to exercise control, Cowan had a duty to take reasonable action to prevent continuation of the entrustment. The rationale underlying imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others. *See Restatement* § 390. The same logic supports a duty to take reasonable action to terminate the entrustment if the entrustor acquires information that such an unreasonable risk exists or has come into being after the entrustment and the entrustor has the legal right and ability to end the entrustment.[10] We conclude that such a duty is encom-

---

**8.** *Hasegawa* refers to the parents' day-to-day control over their son as indicative "that mother and father permitted the son to use the automobile and that its use was under their actual control." 684 P.2d at 939. *Hilberg* then cites *Hasegawa* in support of a statement that for a negligent entrustment action the "supplier must also have some ability subsequently to control the user or the manner in which the instrumentality is used." 761 P.2d at 238.

**9.** As a result, supply and control, the first two elements of a negligent entrustment claim as set

forth in *Hasegawa*, 684 P.2d at 939, can better be compressed into one, incorporating the standards discussed in this opinion. The trial courts should modify the *Hasegawa* elements accordingly, and should make clear that control is to be measured at the time of the entrustment.

**10.** In some entrustment situations, the entrustor may not have retained such a legal right by the terms of the initial entrustment.

passed within the doctrine of negligent entrustment.

Applying the foregoing reasoning to the facts of this case, we conclude that unless precluded by policy reasons, Cowan had a duty to take reasonable action to terminate the entrustment before leaving the Idaho Springs restaurant if by that time he possessed knowledge that Casebolt was likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself or others.

2.

We now address whether public policy considerations preclude recognition of any duty by Cowan to Casebolt, under negligent entrustment doctrine or otherwise. The district court adopted standard duty analysis in reaching the conclusion that Cowan owed no duty to Casebolt because "Colorado law does not recognize a duty on behalf of Defendants to protect someone from their own abuse of alcohol." The district court considered the policy factors of nature of the risk and foreseeability and likelihood of injury, the magnitude of the burden and the consequence of imposing the duty on the defendants, the social utility of their conduct, and the culpability or moral blame associated with lending the automobile. *See, e.g., Whitlock,* 744 P.2d at 57; *Smith,* 726 P.2d at 1127. In rejecting recognition of a duty, the district court held that Cowan had no duty because under contemporary standards "individuals must accept responsibility for their own actions."

The court of appeals also referred to *Whitlock.* Without detailed analysis, the court concluded that no duty arose because Cowan did not supply the alcoholic beverages and was not in a position to exercise control at the time Casebolt became intoxicated. *Casebolt,* 809 P.2d at 1081.

We have recognized in our initial discussion of sections 308 and 390 of the *Restatement* that although the negligent entrustment doctrine is intended to reflect a conclusion that a duty exists under the specific and limited circumstances for which those sections provide guidance, there still remains room for consideration of policy factors in individual cases. *Cf. Butcher,* 728 P.2d at 389–90 (incorporating evaluation of policy considerations in determining existence of duty under a negligent entrustment claim analyzed under § 308). We based this view on the fact that both sections apply to the creation of *unreasonable* risks and that the reasonableness of a risk may depend to a degree upon policy considerations. As we first recognized in *Smith,* relevant policy factors in duty analysis include, for example,

> the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor.

726 P.2d at 1127. These factors are illustrative and not exclusive. *Id.; Whitlock,* 744 P.2d at 57.

Consideration of the relevant policy factors persuades us that entrustment of an automobile to one who is likely to operate it under the influence of intoxicating liquor soon after obtaining possession of the vehicle presents an *unreasonable* risk of physical harm to the entrustee and others. Certainly, the risk to an inebriated driver and the foreseeability and likelihood that such a driver will cause injury to himself by operation of a motor vehicle are apparent. The social utility of the borrower's conduct may vary depending upon the purpose for the use of the vehicle. Where, as here, that purpose is simply transportation to the borrower's home, the social value of such a mission pales in relation to the magnitude of the risk. The burden upon the car owner to take reasonable steps to guard against injury to the borrower is not great. Although it is unnecessary to decide what is reasonably required of the owner—a determination that may vary with the circumstances—it would not be burdensome to take the minimal steps of revoking permission to use the vehicle and requesting the return of the keys. We also are unable to perceive any untoward conse-

quences that could result from imposition of such a burden on the vehicle owner.

■ We recognize that voluntary intoxication is socially undesirable conduct and that individual responsibility to refrain from such conduct should be promoted. These considerations, however, cannot be permitted to obscure the fact that a vehicle owner who has the right and ability to control the use of the vehicle and takes no action to prevent the continued use of the vehicle by a borrower who the owner knows is likely to operate the vehicle while intoxicated is also engaged in morally reprehensible behavior that should be discouraged. Comparative negligence provides the appropriate framework for examining any negligence on the part of the individual who drives after consuming alcoholic beverages. *See Lyons v. Nasby*, 770 P.2d 1250 (Colo.1989) (employing an analysis paralleling that set forth in this paragraph in holding that a tavern owner owes a duty of care to an intoxicated person not to serve that person alcoholic beverages).[11] In similar situations, other courts have held that an entrustee is entitled to a comparative fault trial despite his own negligence in becoming intoxicated. *Blake*, 208 Cal. Rptr. at 708; *Gorday*, 523 So.2d at 1216–17; *King*, 541 N.E.2d at 852–53.[12]

We conclude from our review of the relevant policy considerations that the risk presented by the entrustment, or the continuation of an entrustment, of a vehicle to a person likely to drive it while inebriated is an unreasonable one under section 390 of the *Restatement*.

3.

■ Based on the foregoing analysis, we must now determine whether summary judgment was proper. We conclude that it was not, because the applicability of negligent entrustment as analyzed under the framework of section 390 of the *Restatement* depends on resolution of genuine issues of material fact.

In order to prevail, the plaintiffs must establish that Cowan knew or had reason to know that Casebolt would be *likely* to use the vehicle in a manner involving unreasonable risk of physical harm to himself. *See Restatement* § 390. This requires determination of such facts as whether Casebolt had a pattern of continuing to drink once he started, whether he had a propensity to drink and drive, the amount of alcoholic beverages Casebolt had consumed before Cowan left the restaurant, and the extent of Cowan's knowledge of all these matters at that time. The affidavit of Ned Slocum indicates that Cowan had information concerning Casebolt's drinking habits and behavior through some limited personal observation and through a conversation with Slocum. According to Slocum, Cowan expressed the opinion that after a few beers Casebolt was a "wild man" and that he had directed other employees not to take Casebolt drinking because he drank excessively and became uncontrollable. Although Cowan contradicted these statements, the record presents a genuine issue as to their truth. Cowan also knew that Casebolt lived in the Denver metropolitan area and that his reason for borrowing the Milco vehicle included mak-

---

**11.** Subsequent to the occurrence of the operative facts upon which our decision in *Lyons* was based, but prior to the issuance of that decision, the Colorado general assembly enacted statutes narrowly limiting the circumstances in which a commercial vendor or a social host will be subject to liability for injuries caused by an intoxicated person after being served alcoholic beverages by the commercial vendor or social host, *See* §§ 12–46–112.5 and 12–47–128.5, 5B C.R.S. (1991). These statutes do not apply to entrusting a motor vehicle to an intoxicated person.

**12.** It is important to recognize that contributory negligence is not a bar to recovery in a negli-

gence action in Colorado. § 13–21–111, 6A C.R.S. (1987). The legislature has provided:

> Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

§ 13–21–111(1).

ing a return trip home. Summary judgment is a drastic remedy and is appropriate only in the clearest of cases. *E.g., Mancuso*, 818 P.2d at 736; *Churchey*, 759 P.2d at 1339–40. Where, as here, genuine issues of material fact are in dispute, summary judgment cannot be sustained.

## IV.

As the district court recognized, genuine issues of material fact exist concerning the issues of proximate cause and comparative negligence. Our own review of the record causes us to conclude that genuine issues of material fact also exist concerning the applicability of the negligent entrustment doctrine. We therefore reverse the judgment of the court of appeals and return the case to that court with directions to reverse the district court's summary judgment and to remand the case to the district court for further proceedings consistent with the views expressed in this opinion.

ROVIRA, C.J., dissents.

ERICKSON, J., dissents.

VOLLACK, J., dissents, and ERICKSON, J., joins in the dissent.

## Chief Justice ROVIRA dissenting:

Because I believe that the responsibility for injuries suffered by a person who drinks and drives lies with that individual, I conclude that the trial court and the court of appeals reached the proper conclusion in declining to find a duty on the part of Cowan.[1] While the majority recognizes that voluntary intoxication is socially undesirable conduct, *see* maj. op. at 362, it nevertheless rewards such conduct by permitting the person who drinks to excess to recover money from another for injuries sustained while intoxicated. I find these two positions contradictory and, accordingly, I disagree with the majority's conclusion that Cowan owed a duty to Casebolt to protect him from the fatal injuries proximately caused by his own consumption of alcohol. I, therefore, respectfully dissent.

## I

Casebolt and his wife, Susan, owned two cars. The title to the Pinto that Casebolt normally drove to work was in his wife's name and the title to the other car, a Cavalier, was in both their names. The Pinto could be driven on short trips but had a tendency to overheat. Consequently, on the two days prior to the day of the fatal accident, Casebolt drove the Cavalier to his job in Idaho Springs. The undisputed facts establish that the evening before the fatal accident, because Susan Casebolt needed the Cavalier the next day, Casebolt requested, and Cowan granted, use of an automobile for the purpose of traveling from his home to the job site in Idaho Springs. Casebolt had not been drinking on the day he requested use of the car. Casebolt drove the Pinto to Cowan's office to obtain the borrowed car. Casebolt used the vehicle, as requested, to get from his home to Idaho Springs the next day. Once the work was completed, Casebolt and several coworkers, including Cowan, consumed beer at the job site, which was provided by the job site owner. Cowan admitted to seeing Casebolt consume one beer at the site. After leaving the project site, Casebolt, several other crew members, and Cowan had lunch together. Cowan acknowledges that Casebolt drank one beer at lunch and that, after lunch, Cowan observed Casebolt go to the bar with several of his coworkers. When Cowan went over to the bar, they told him that they were going to "have a beer after lunch." Nothing in the record indicates that Cowan in any way encouraged Casebolt to drink or observed Casebolt in a state of visible intoxication at that time. Cowan did not pay for anyone's beer but his own. Cowan left the restaurant after lunch. While the record does not clearly establish how many beers Casebolt consumed while in Cowan's presence, it is undisputed that Casebolt was not intoxicated when Cowan left the restaurant at approximately 1:00 p.m. *See* maj. op. at 354.

1. Recognizing the ambiguity over the named defendants, *see* maj. op. at 353 n. 1, defendants will be referred to as "Cowan" throughout this dissent.

Juli Gosney, a waitress at the restaurant where Casebolt had lunch, executed an affidavit in which she stated that, before Casebolt left the restaurant that afternoon, he asked her to go on a date with him. Having told him that she did not get off work until 6:00 p.m., Casebolt returned to the restaurant at approximately 5:30 p.m. to meet Gosney for their date. Gosney subsequently decided not to go out with Casebolt. When she told him that she had changed her mind, Casebolt did not appear intoxicated to her. Gosney left the restaurant when her shift was over. As she was leaving, she observed Casebolt walking across the street alone.

At approximately 6:30 p.m., Casebolt, while intoxicated, drove the borrowed car east in the westbound lane on the highway, and as a result of an ensuing collision, suffered fatal injuries. Asserting that Cowan was negligent in entrusting the car to Casebolt, Casebolt's wife and children sued Cowan for wrongful death. This case does not involve any injured third party or entrustment of an inherently dangerous object.

## II

I do not dispute the majority's holding that "the doctrine of negligent entrustment is part of the law of negligence in this state." *See* maj. op. at 357. However, because negligent entrustment is one theory under the law of negligence, it is necessary that, for the cause of action to stand, there first be a duty recognized under the facts of the case. The duty allegedly breached must be owed to the person making the negligence claim. *See University of Denver v. Whitlock*, 744 P.2d 54, 56–57 (Colo.1987) (duty of care upon defendant must be for benefit of plaintiff). In this case, since the claim is based on wrongful death, the plaintiffs can maintain an action only if Casebolt could have done so had his injuries not been fatal. *Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 530 (Colo.1991). Here, since I believe that

there was no duty owed to Casebolt by Cowan at the time of this accident, Casebolt could not have maintained this action. I would, therefore, affirm the grant of summary judgment. Summary judgment would be appropriate because, once it is determined that no duty exists, a claim for negligence would not lie, a determination of material facts would not affect the outcome, and Cowan would be entitled to judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo.1988).

### A

The majority finds that section 390 of the *Restatement (Second) of Torts* (1965) ("Restatement") establishes a framework for examining whether Cowan owed Casebolt a duty here. *See* maj. op. at 358. I believe, however, that the negligent entrustment principles set out in the Restatement do not support imposition of a duty owed to these particular plaintiffs.

Section 308 of the Restatement, entitled "Permitting Improper Persons to Use Things or Engage in Activities," provides:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm *to others*.

(Emphasis added.) Thus, section 308 is not concerned with injuries suffered by the entrustee, but only with third party injuries as a result of entrustment of a chattel to an individual whom the entrustor knows or should know will misuse the object. *See Restatement* § 308 cmt. b (1965). All the illustrations to section 308 involve third-party injury. *See id.*, illus. 1–4. Decisions from Colorado and other jurisdictions have considered and applied the rule of section 308 in the context of third-party injuries, not to cases where the injuries occur to the entrustee.[2]

---

**2.** *See, e.g., Butcher v. Cordova*, 728 P.2d 388, 390 (Colo.App.1986) (duty owed to third-party plaintiff by entrustor who provided son with a BB

gun); *Gariup Const. Co. v. Foster*, 519 N.E.2d 1224, 1228–29 (Ind.1988) (An employee left a company party intoxicated and injured a third-

Utilizing section 308 only for the purpose of setting forth the general form of the negligent entrustment doctrine, *see* maj. op. at 356, the majority turns to section 390 of the Restatement and concludes that it provides a basis for resolution of the issue of duty. The majority states that the duty it is examining is "whether a supplier of a chattel owes any obligation to a person incurring physical harm from the use of the chattel by the person to whom it is supplied." *See* maj. op. at 358. It is important to note, however, that under these facts, we are interested only in whether such a duty is owed to the entrustee who incurs physical harm, not to injured third parties. With this duty as my focus, I conclude that the facts here do not fall within the scope of section 390. Section 390 of the Restatement, entitled "Chattel for Use by Person Known to be Incompetent," provides:

> One who supplied directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm *resulting to them.*

(Emphasis added.) Unlike section 308, section 390 covers injuries to the entrustee and has been used to support successful assertions of negligent entrustment in cases brought by entrustees. *See Keller v. Kiedinger,* 389 So.2d 129 (Ala.1980) (entrustee of car was 14–year–old unlicensed driver); *Blake v. Moore,* 162 Cal.App.3d 700, 208 Cal.Rptr. 703 (1984) (defendant supplied alcohol and then entrusted car to

obviously intoxicated plaintiff); *Gorday v. Faris,* 523 So.2d 1215 (Fla.App.1988) (entrustment of car to intoxicated entrustee); *King v. Petefish,* 185 Ill.App.3d 630, 133 Ill.Dec. 636, 541 N.E.2d 847 (1989) (car entrusted to underage unlicensed entrustee whom entrustor knew to be intoxicated). Comment (b) to this rule states, however, that this section is a special application of the rule stated in section 308. *See Restatement* § 390 cmt. b (1965). It follows, therefore, that the rule articulates narrower, limited circumstances, the presence of which trigger operation of the liability for negligence articulated by section 308. The narrowly circumscribed set of facts to which section 390 is applicable is evidenced by examination of the comments and illustrations set forth by the drafters of the Restatement. Comment (b) states that "[t]his section deals with the supplying of a chattel to a person *incompetent to use it safely....*" (Emphasis added.) The limited set of circumstances to which section 390 applies, requires, therefore, incompetence which is evident or should be evident to the entrustor at the time of the entrustment. All except one of the illustrations to section 390 demonstrate application of the rule for injuries to third persons. These illustrations cover entrustment of a loaded gun to a "feeble-minded girl of ten," of a car to a ten-year-old boy who has never before driven, of a car to a chauffeur who has a *habit* of speeding, of a car to a friend for a dance knowing the friend *habitually* becomes intoxicated at such dances, of a car to a person who announces that he will speed while driving it, and of a car to an epileptic adult. *See Restatement* § 390 illus. 1–6 (1965). There is obvious incompetence present in all of

party motorist. Court looked to section 308, *inter alia,* and found a duty arose on part of employer as owed to third-person motorists potentially exposed to significant danger.); *McCarson v. Foreman,* 102 N.M. 151, 692 P.2d 537, 542 (1984) (negligent entrustment arises when entrustor provides vehicle to entrustee, creating unreasonable risk of harm to others); *Poplaski v. Lamphere,* 565 A.2d 1326, 1331 (Vt.1989) (quoting section 308 and ruling on whether duty to third person was created); *Huggins v. Tri–County Bonding Co.,* 175 W.Va. 643, 337 S.E.2d

12, 17 (1985) (citing section 308 and stating that critical element of negligent entrustment was allowing individual to use car when such person known to cause unreasonable risk of harm to others). *But see King v. Petefish,* 185 Ill.App.3d 630, 133 Ill.Dec. 636, 541 N.E.2d 847, 850, 855 (Ill.App.1989) (court found decedent entrustee's estate had a claim against entrustor, although the dissent argued that negligent entrustment doctrine dealt with duties owed third persons and not the entrustee).

these examples. The incompetence is either visible to the entrustor, verbalized by the entrustee or known by the entrustor to be *habitual* behavior of the entrustee. More importantly, the only illustration under section 390 which imposes liability on an entrustor for injuries to the entrustee is illustration 7, which states:

A, who makes a business out of letting boats for hire, rents his boat to B and C, who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or to collide with other boats. B and C by their drunken mismanagement collide with the boat of D, upsetting both boats. B, C, and D are drowned. A is subject to liability to the estates of B, C, and D under the death statute, although the estates of B and C may also be liable for the death of D.

*See id.* illus. 7. Again, the incompetence of the entrustees was obviously visible to the entrustor at the time of the entrustment in this illustration.

Similarly, examination of the application of section 390 to claims by injured entrustees by courts in other jurisdictions supports a conclusion that obvious incompetence at the time of the entrustment is necessary before a duty will be found under section 390. In *Mele v. Turner,* 106 Wash.2d 73, 720 P.2d 787 (1986), plaintiff was an eighteen-year-old college student who sued his neighbors for entrusting him with their lawn mower. Plaintiff was injured when he put his hand into the cutter blade while the mower was running. The Washington court held that summary judgment for the defendants was proper because "[t]here is no requirement of law or reason mandating that someone asking a neighbor to mow a lawn must question that neighbor's competency when he is a college student 2 months shy of 19 who *lacks obvious physical or mental impairment.*" *Id.* at 789. Similarly, in *Axelson v. Williamson,* 324 N.W.2d 241, 243–44 (Minn. 1982), the decedent entrustee was killed in a one-car automobile accident. Because the entrustor was aware that the decedent was not old enough to hold a driver's license, the court applied section 390, stating

that negligent entrustment applies where a chattel is entrusted to an "incompetent or inexperienced person." *Id.* at 243.

Even under fact situations involving third party injury, courts have imposed a high standard of incompetence before allowing a claim under section 390. *See, e.g., Drummond v. Walker,* 643 F.Supp. 190, 191 (D.D.C.1986), *aff'd* 861 F.2d 303 (D.C.Cir.1988) (summary judgment granted where injured third party failed to establish that entrustor had knowledge driver belonged to a class *notoriously incompetent* to operate a vehicle); *Keller v. Kiedinger,* 389 So.2d 129, 132–35 (Ala.1980) (section 390 applied where car was entrusted to known incompetent—a fourteen-year-old girl); *Arkansas Bank & Trust Co. v. Erwin,* 300 Ark. 599, 781 S.W.2d 21, 22–23 (1989) (negligent entrustment under section 390 properly alleged where entrustee was known mental incompetent); *Krawitz v. Rusch,* 209 Cal.App.3d 957, 257 Cal.Rptr. 610 (1989) (driving inexperience did not necessarily indicate incompetence); *O'Toole v. Carlsbad Shell Service Station,* 202 Cal. App.3d 151, 247 Cal.Rptr. 663 (1988) (court reversed grant of summary judgment on negligent entrustment claim where entrustee of automobile was obviously intoxicated minor); *First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 7–8 (N.D.1988) (hardware store sold pistol to fifteen-year-old boy who accidentally shot another boy); *Brigance v. Velvet Dove Restaurant,* 725 P.2d 300, 304 (Okla.1986) (recognizing duty not to sell liquor to *noticeably intoxicated* person).

The facts here are very different. The record establishes that, when Casebolt telephoned Cowan to request the loan of the car and when permission to borrow the car was granted, Casebolt had not been drinking. Likewise, when Cowan departed Casebolt's company on the day of the accident, Casebolt was not visibly intoxicated. Since liability to the entrustee under section 390 requires a more obvious incompetence, I do not find this section to be a basis for imposing a duty here but believe that the facts we are now considering present an instance

where employing the guidance of section 390 would frustrate public policy.

### B

Recognizing that the recognition of a duty is "an expression of the sum total of those considerations of policy which lead the law to say that a plaintiff is entitled to protection," W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 53 at 358 (5th ed. 1984) (quoted with approval in *University of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987)), we examine the relevant public policy to determine whether a duty is appropriate here.

The legislature has never enacted legislation directly related to entrustment of a motor vehicle to a person who subsequently becomes intoxicated and causes injury to either himself or others. The General Assembly has, however, developed a legislative scheme designed to support a policy placing liability for injuries caused as a result of excessive drinking on the person who consumes excessive amounts of alcohol. We turn now to examine the development of this policy.

In *Lyons v. Nasby*, 770 P.2d 1250 (Colo. 1989), in which I dissented, the court extended our previous decision in *Largo Corp. v. Crespin*, 727 P.2d 1098, 1102 (Colo.1986), which held that tavern owners owe a duty to third parties to act with reasonable care in serving alcoholic beverages to patrons. *Lyons* involved a wrongful death claim by the mother of a tavern patron against the tavern owner who served her son alcoholic beverages resulting in her son's intoxication and consequent death after he drove his car off a mountain road. *Lyons* at 1252. We extended the liability of tavern owners, holding that tavern owners also owe a duty of care to intoxicated patrons not to serve those customers alcohol. *Id.* at 1256.

We prefaced the holding in *Lyons* by noting that legislative changes to statutes governing tavern owners' liability occurred after the accrual of the claim in *Lyons* and were, therefore, not applicable to the claim therein. *Id.* at 1253. The subsequent amendments made dramshop liability in Colorado strictly a creature of statute, *see Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 529 (Colo.1991); *Lyons* at 1253, and eliminated civil liability on tavern owners for injuries resulting from serving alcohol to persons of majority age brought by that party or that party's estate. *See* §§ 12–46–112.5(1) & (3) and 12–47–128.5(1) & (3), 5B C.R.S. (1991). These amendments, in fact, negated any further application of the public policy rationale articulated in *Lyons* by reversing the policy declaration supporting such liability. *See Sigman* at 529 (refusing to apply *Lyons* because of passage of statutory amendments referenced above). Sections 12–46–112.5(3)(a) and 12–47–128.5(3)(a) state, in pertinent part:

> No licensee is civilly liable to any injured individual or his estate for any injury to such individual or damage to any property suffered because of the intoxication of any person due to the sale or service of any [alcoholic beverage including fermented malt beverages] to such person....

The legislature's amendments of the dramshop statutes were premised on a recognition that it is not the sale or service of alcohol, but the consumption of alcohol that proximately causes injuries that result from intoxication. *Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 531 (Colo. 1991); *Lyons*, 770 P.2d 1250, 1260–64 (Rovira, J., dissenting). In *Sigman*, recognizing this legislative purpose, we unanimously affirmed dismissal of a wrongful death claim, realizing that, through the amendments to the dramshop laws, the legislature evidenced an intent to deny compensation where an individual's injury resulted from his own overindulgence, thus enforcing individual responsibility for personal injuries that may result therefrom. *Id.* at 531. *See also Charlton v. Kimata*, 815 P.2d 946, 951 (Colo.1991) (citing the comments of Representative Hamlin, co-sponsor of the bill that included section 12–47–128.5, where the Senator stated that the rationale for placing the legal responsibility on the individual consuming the alcohol is

that, where an individual makes a deliberate choice to drink alcohol, that individual should also be responsible if that choice results in negligence).

In rejecting the public policy rationale of *Lyons*, the legislature recognized that "in certain cases the consumption of alcoholic beverages rather than the sale, service, or provision thereof is the proximate cause of injuries or damages inflicted upon another by an intoxicated person...." § 12–47–128.5(1), 5B C.R.S. (1991). *See also* § 12–46–112.5(1), 5B C.R.S. (1991). Not only has the legislature shielded licensed vendors from previously imposed common law liability for injuries proximately caused by an individual's intoxication, but social hosts have also been shielded. §§ 12–47–128.5(4)(a) and 12–46–112.5(4)(a).[3]

It is undisputed here that Cowan did not provide the alcohol that proximately caused Casebolt's death. It is anomalous to have a public policy which holds that a social host or seller or supplier of alcohol to an intoxicated person has no liability for any resulting injuries, and yet permit liability against a lender of a car to a person who is not intoxicated when the car is loaned nor when last seen by the lender.

The legislative intent is frustrated, if not negated, by the majority's attempt to avoid the clear public policy statement of the legislature that the consumption of alcoholic beverages is the proximate cause of injuries or damages, by embracing section 390 of the Restatement.

While other factors may be worthy of consideration in determining whether Cowan owed Casebolt a duty, we have previously articulated several considerations for determining whether a duty exists in a particular case, including "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *University of Denver*, 744 P.2d at 57. I now consider them and conclude that imposition of a duty on Cowan would frustrate the balancing test as set forth in *University of Denver*.

The risk involved in either loaning a car to an individual who is sober at the time or in not requesting return of a loaned car from an individual who is not intoxicated is that the individual may become intoxicated and injure himself. The foreseeability or likelihood of such injury requires excessive speculation where, as here, the request is for transportation for the purpose of getting to the job site, regardless of whether the entrustor has any knowledge that the entrustee had, as is legally allowed in this state, imbibed in alcoholic beverages in the past. I recognize also that there is social utility in an employer loaning a car in order to enable an employee to reach a work site. It fosters productivity and enables an employee to earn his day's wage, which, due to lack of transportation, he otherwise might not be able to do. Lastly, I believe it constitutes an excessive burden to place a duty upon entrustors who, in good faith, loan their car or an automobile under their control to an otherwise competent adult who is not visibly intoxicated at the time. Indeed, Susan Casebolt herself engaged in similar conduct on the two days prior to the accident when her husband used the car which is usually under her control to reach his job. If Susan Casebolt had an awareness of her husband's past drinking equal to or greater than Cowan's, then, under the majority's rule, she may have been under a duty herself not to allow her husband to use the car on the two prior days. On a broader level, the imposition of the duty as recognized by the majority would potentially expose to liability any person lending a car to an acquaintance who the lender may have observed drinking alcoholic beverages in the past if the borrower subsequently

---

**3.** In *Charlton v. Kimata*, 815 P.2d 946 (Colo. 1991), we again unanimously held that social hosts who furnish alcoholic beverages to their guests are not liable for any injuries suffered due to the tortious actions of their intoxicated guests unless the host willfully and knowingly serves alcohol to a minor. This case in fact extends the social host's shield from liability under § 12–47–128.5 not only to injuries suffered by the intoxicated individual but also to third parties who are injured as a result of that intoxication.

consumes alcohol and injures himself while using the borrowed car.

I conclude, therefore, that a proper balancing of relevant policy considerations weighs against imposition of a duty owed to Casebolt by Cowan not to entrust the car. Likewise, applying the same principles, I do not believe that Cowan was under any duty to terminate the entrustment once made because, as stated, Casebolt was not intoxicated at the time Cowan last saw him. Therefore, section 390 would not be applicable and public policy considerations as set forth above also weigh against the imposition of this duty. Accordingly, I would affirm the judgment of the court of appeals upholding the summary judgment in favor of Cowan.

Justice ERICKSON dissenting:

I agree with Justice Lohr's conclusion that the doctrine of negligent entrustment is part of the law of Colorado, but I would not reverse the summary judgment for the defendants. In *Casebolt v. Cowan*, 809 P.2d 1080 (Colo.App.1991), the court of appeals affirmed the summary judgment because (1) Cowan did not furnish the alcohol to Casebolt that resulted in his intoxication; (2) Cowan did not see Casebolt when he was visibly intoxicated; and (3) Cowan was not in a position to exercise control over the automobile when Casebolt became intoxicated. The trial court that entered the summary judgment for the defendants concluded that Cowan had no duty to protect Casebolt against the voluntary consumption of alcohol and that even if such a duty were imposed the comparative negligence of Casebolt exceeded any negligence by Cowan.

I agree with Justice Vollack's dissent and part of the dissent of Chief Justice Rovira, but I disagree with Chief Justice Rovira's interpretation of *Lyons v. Nasby*, 770 P.2d 1250 (Colo.1989), and sections 12–46–112.-5(3)(a), 5B C.R.S. (1991), and 12–47–128.-5(3)(a), 5B C.R.S. (1991), which relate to the liability of vendors licensed to sell alcoholic beverages. In my view, a licensee, or bartender, has different duties than Cowan had when he permitted Casebolt to borrow

an automobile. The pleadings and the facts, when viewed in the light most favorable to the plaintiffs, do not set forth a claim for negligent entrustment or create a controverted factual issue that would support our reversal of the summary judgment entered by the trial court.

Responsibility to third parties under section 390 of the Restatement (Second) of Torts (1965), if Casebolt was incompetent, requires that the person who supplies a vehicle to another know that the other person will be likely to use it in an unreasonably harmful manner. When Cowan entrusted the automobile to Casebolt, he was unaware of any facts that would have enabled him to foresee that Casebolt would drive the vehicle while intoxicated. Cowan made the automobile available to Casebolt to enable him to drive to a construction project. Casebolt drove to the job site, completed his work, and was not intoxicated when Cowan last saw him. Cowan saw Casebolt drink at least two beers on the afternoon of July 17, 1987, and saw Casebolt go to the bar with other employees for another beer, but Casebolt was not intoxicated or out of control when Cowan left him at the Idaho Springs restaurant at approximately 1:00 p.m. The fatal accident occurred five and one-half hours later. Nothing that occurred in Idaho Springs while Cowan was present would support our reversal of the summary judgment.

Cowan had been told by Ned Slocum, sometime in the past, that Casebolt became "uncontrollable" when he drank, but there is nothing in the record to establish that Casebolt had ever driven while he was intoxicated or that he was uncontrollable prior to his fatal collision. Liability under section 390 turns on whether Cowan's knowledge of Casebolt's past alcohol-related behavior was sufficient to make it foreseeable that Casebolt would become intoxicated and would drive while intoxicated.

The record does not support an inference that Cowan had reason to know that Casebolt was incompetent or would be likely to use the automobile entrusted to him in an unreasonable manner, or while intoxicated.

In my view, summary judgment was properly entered for Cowan.

I respectfully dissent.

Justice VOLLACK dissenting:

The majority holds, in a case of first impression, that "section 390 provides a basis for resolving the issues of duty (whether a supplier of a chattel owes any obligation to a person incurring physical harm from the use of the chattel by the person to whom it is supplied)." Maj. op. at 358. The majority also holds that section 390 helps resolve "the specific standard of care (the criteria for assessing reasonable care in light of apparent risk) in the context of supplying chattels for the use of others." *Id.* The majority relies on section 390 [hereinafter "section 390"] of the *Restatement (Second) of Torts* (1965) [hereinafter "*Restatement*"]. I disagree with both the majority's construction of negligent entrustment and with its reliance on section 390 in support of its analysis in this case.

In my opinion, liability only arises under the doctrine of negligent entrustment in the set of circumstances where a person supplies a chattel to another with knowledge of the recipient's unfitness at the moment of transfer. Since the plaintiffs in this action do not argue that Cowan was negligent when he entrusted the company car to Casebolt, Cowan cannot be liable under negligent entrustment.

### I.

This court has not previously considered the doctrine of negligent entrustment.[1] Courts in numerous other jurisdictions, as the majority acknowledges, have recognized a theory of liability premised on negligent entrustment. Maj. op. at 358–359; *Douglass v. Hartford Insurance Co.*, 602 F.2d 934, 936 (10th Cir.1979) ("Negligent entrustment is a common law tort, recognized in virtually every state."). In many of these jurisdictions, liability for negligent entrustment is recognized when an actor supplies a chattel to a third person who the actor knows or has reason to know is incompetent *at the time of entrustment.* *Mason v. New,* 475 So.2d 854, 856 (Ala. 1985), *followed in McCurdy v. Young,* 587 So.2d 371 (Ala.Civ.App.1991); *Henderson v. Professional Coatings Corp.,* 72 Haw. 387, 819 P.2d 84, 90 (1991); *Teter v. Clemens,* 112 Ill.2d 252, 97 Ill.Dec. 467, 492 N.E.2d 1340, 1342 (1986); *First Trust Co. v. Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 8 (N.D.1988); *Robare v. Pekarcik,* 109 Pa.Cmwlth. 87, 530 A.2d 534, 536–37 (1987) (discussing *Gibson v. Bruner,* 406 Pa. 315, 178 A.2d 145 (1961)); *Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987); and *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150, 152–53 (1983).

The Tenth Circuit Court of Appeals stated that "[t]he Restatement (Second) of Torts § 308 states the rule [of negligent entrustment]." *Douglass v. Hartford Insurance Co.,* 602 F.2d 934, 936 (10th Cir. 1979). Section 308 provides:

> *Permitting Improper Persons to Use Things or Engage in Activities.* It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Restatement* § 308 (1965).

The majority, however, finds that section 390 generally applies "in the context of supplying chattels for the use of others." Maj. op. at 358. The majority de-emphasizes the express purpose of section 390. Section 390 is titled "Chattel for Use by Person *Known to be Incompetent.*" This section provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has

---

1. The court of appeals has, as the majority notes, recognized the doctrine of negligent en-

trustment. Maj. op. at 356–357.

reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Illustration 1 to section 390 exemplifies the section's application:

A gives a loaded gun to B, a feeble-minded girl of ten, to be carried by her to C. While B is carrying the gun she tampers with the trigger and discharges it, harming C. A is subject to liability to C.

*Restatement* § 390 illus. 1 (1965). Illustration 6 to section 390 similarly demonstrates its application:

A sells or gives an automobile to B, his adult son, knowing that B is an epileptic, but that B nevertheless intends to drive the car. While B is driving he suffers an epileptic seizure, loses control of the car, and injures C. A is subject to liability to C.

*Restatement* § 390 illus. 6 (1965).

Section 390 has been applied in other jurisdictions in a manner consistent with its intended application as evidenced in the illustrations. The Minnesota Supreme Court, for example, found that section 390 provided the appropriate analytic framework where a defendant entrusted a car to a fifteen-year-old girl who, while driving, lost control of the car and crashed. *Axelson v. Williamson*, 324 N.W.2d 241, 242 (Minn.1982). The court held that "the tort of negligent entrustment as it applies to the entrustment of a chattel to an *incompetent* or *inexperienced* person is described in Restatement (Second) of Torts § 390." *Id.* at 243 (emphasis added).

Other courts have followed this reasoning. In *First Trust Co. v. Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5 (N.D.1988), the Supreme Court of North Dakota similarly found that a jury instruction grounded in section 390 should have been given where a hardware store sold a twenty-two-caliber pistol to a fifteen-year-old boy who accidentally shot a fourteen-year-old boy with the pistol. *First Trust Co.*, 429 N.W.2d at 7–8. *See also Keller v. Kiedinger*, 389·So.2d 129 (Ala.1980) (cause of action was appropriate under section 390 where fourteen-year-old girl was loaned car); *Arkansas Bank & Trust Co. v. Erwin*, 300 Ark. 599, 781 S.W.2d 21, 22–23 (1989) (section 390 applied where plaintiff alleged that driver was incompetent by reason of insanity caused by schizophrenic reaction); *Kyte v. Philip Morris Inc.*, 408 Mass. 162, 556 N.E.2d 1025, 1028–29 (1990) (supplier of cigarettes to minors could be liable under section 390); *Mele v. Turner*, 106 Wash.2d 73, 720 P.2d 787, 789 (1986) (cause of action was not proper under section 390 where the actor had no obvious physical or mental impairments); and *Bernethy v. Walt Failor's, Inc.*, 97 Wash.2d 929, 653 P.2d 280, 283 (1982) (cause of action was best summarized under section 390 where actor was visibly intoxicated and was entrusted with a gun).

The majority acknowledges that section 390 is a special application of the rule stated in section 308. Maj. op. at 357 (relying on *Restatement* § 390 cmt. b (1965)). The majority does note that "[t]he framers of section 390 specifically envisioned its application to cases of intoxicated entrustees." Maj. op. at 358. The majority cites illustration 7 of section 390, which involves two entrustees who are so obviously intoxicated that they will clearly mismanage the entrusted chattel. *Restatement* § 390 illus. 7 (1965). The majority also acknowledges that other jurisdictions apply section 390 where an "entrustee's incompetence to operate a vehicle centers on or includes the consumption of alcohol." Maj. op. at 358. The cases acknowledged involve, unlike the present case, situations where an entrustee is either intoxicated at the time of entrustment or is known to the entrustor as a habitual drunk. *See Blake v. Moore*, 162 Cal.App.3d 700, 208 Cal.Rptr. 703, 707–08 (1984) (plaintiff claimed that entrustee was obviously intoxicated when entrusted with a car); *Gorday v. Faris*, 523 So.2d 1215, 1219 (Fla.App.1988) (applying section 390 with difficulty when plaintiff took control over car knowing he was drunk and in no

condition to drive); *Snowhite v. State*, 243 Md. 291, 221 A.2d 342, 355 (1966) (entrustor previously entrusted truck to entrustee with knowledge that entrustee had been drinking heavily); *Lombardo v. Hoag*, 566 A.2d 1185, 1186 (entrustor spent entire day carousing with entrustee and knew that entrustee was "buzzed" when entrusted with vehicle); and *Cameron v. Downs*, 32 Wash.App. 875, 650 P.2d 260, 262 (1982) (entrustor gave entrustee keys to van to stop entrustee from using motorcycle, knowing that entrustee would be consuming alcohol).

By applying section 390 to this case, the majority broadens the very narrow group of entrustees to whom the section expressly applies: persons *known to be incompetent.* In my view, the record on appeal does not demonstrate that Cowan knew or *had reason to know* that Casebolt was incompetent at the time of entrustment. The majority cites section 390 when stating that "one has a duty not to supply a chattel to another who is likely to misuse it." Maj. op. at 360. This characterization more accurately describes the type of entrustee captured by section 308: one who is *not known* to be incompetent. By recognizing section 390 as the general rule, the majority disregards the intent of drafters of the *Restatement* that section 390 has a more narrow application.

## II.

The majority holds, and I agree, "that we need look no further than the initial point of entrustment to determine whether a supplier acted negligently." Maj. op. at 360. I agree, as well, with the majority's rejection of subsequent control over the chattel as an essential element of negligent entrustment. *Id.* Their recognition, however, of a duty to terminate an entrustment [2] essentially contradicts their rejection of any notion of subsequent control. The majority concludes, nonetheless, "that such a duty is encompassed within the doc-

trine of negligent entrustment." Maj. op. at 360–361.

### A.

Fundamental to a claim of negligent entrustment is the act of supplying a chattel. *Restatement* § 308 (1965). To supply a chattel is to provide or furnish another with a chattel. *See Webster's Third New International Dictionary*, at 2297 (1969). An entrustor must first have control over a chattel in order to supply it to another. Comment a to section 308 provides that "[t]he words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing ... only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity." *Restatement* § 308 cmt. a (1965).

Neither section 308 nor section 390 contemplates subsequent control by the entrustor over the chattel or its user as a requisite to liability. *See Restatement* §§ 308 & 390 (1965). Subsequent control would in essence require an entrustor to terminate an entrustment if the entrustor acquired information rising to the level of that which would render an *initial entrustment* negligent. Thus, the majority notes that " ' "liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle." ' " Maj. op. at 360 (quoting *Mettelka v. Superior Court*, 173 Cal.App.3d 1245, 219 Cal.Rptr. 697, 698 (1985).

Sections 308 and 390 only require, as a basis for liability, that suppliers have both control over the chattel and knowledge of its foreseeable misuse *at the time of entrustment.* Imposing a duty to exercise subsequent control over an entrustee on suppliers of chattels—a duty to prevent entrustees from using the chattel—clearly

---

**2.** *See* maj. op. at 361 (concluding that entrustors have "a duty to take reasonable action to termi-

nate the entrustment").

exceeds the intended scope of the sections by extending liability indefinitely.

### B.

The majority's creation of a duty to terminate entrustments essentially imposes a duty on suppliers to exercise control over chattels or their users subsequent to entrustment. *See* maj. op. at 360. Imposition of such a duty is wholly unwarranted and nullifies the rejection of subsequent control.

The majority finds that the rationale underlying negligent entrustment supports recognition of "a duty to take reasonable action to terminate the entrustment if the entrustor acquires information that such an unreasonable risk exists or has come into being after the entrustment and the entrustor has the legal right and ability to end the entrustment." Maj. op. at 360. The majority fails to cite any jurisdiction which has similarly imposed such a duty. The majority does not explain how creating liability at the moment of entrustment (when a supplier must have both control over a chattel and knowledge of its foreseeable misuse) supports an extension of liability indefinitely over time until a point when the supplier acquires information that he or she *did not* possess at the time of entrustment. This duty obliterates the requirement that a supplier must have knowledge at the time of the entrustment in order to be liable under either section 308 or 390.

### III.

In my view, this case is most appropriately analyzed under section 308, the general encapsulation of the negligent entrustment doctrine. The record in this case does not, in my opinion, evince possible proof that Casebolt was either noticeably intoxicated at the time of entrustment, or that Casebolt's drinking habits were such that he was a known incompetent and that Cowan should know or have reason to know that Casebolt was likely to misuse the car. In so noting, I am duly aware of the benefit of all favorable inferences that the nonmoving party is entitled to in passing on summary judgment motions. *Man-*

*cuso v. United Bank*, 818 P.2d 732, 736 (Colo.1991). My view of the record, however, is not necessary to dispose of this case.

The majority notes that liability under a theory of negligent entrustment is determined at "the initial point of entrustment." Maj. op. at 360. Thus, a supplier can only be liable for the negligent supply of a chattel at the time of entrustment. As the majority states, the plaintiffs herein *do not* assert that Cowan was negligent when he initially entrusted the company car to Casebolt on July 16, 1987. Maj. op. at 360. Instead, the plaintiffs relied on the existence of a separate duty "based on a subsequent ability to control the automobile." Since the majority rejected a duty of subsequent control, Cowan cannot be liable under a theory of negligent entrustment. Because I agree with the majority's rejection of subsequent control, I would affirm the district court's summary judgment in favor of Cowan and Milco Construction Company.

I am authorized to say that Justice ERICKSON joins in this dissent.